**Fredrick GASTON, Plaintiff,**

v.

**HOME DEPOT USA, INC., d/b/a Home Depot, Defendant.**

**No. 99–1448–CIV.**

United States District Court, S.D. Florida.

Feb. 2, 2001.

---

Sharon L. Blake, Miami, FL, for plaintiff.

Anne Marie Estevez, Miami, FL, for defendant.

### OMNIBUS ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

GOLD, District Judge.

THIS CAUSE is before the Court upon the following motions:

1. Defendant Home Depot U.S.A., Inc. d/b/a Home Depot's ("Home Depot") Motion for Summary Judgment [D.E. 112], filed on October 17, 2000.

Plaintiff Fredrick Gaston ("Gaston") filed a Response [D .E. 137] on November 27, 2000, and Defendant filed a Reply [D.E. 173] on December 20, 2000. In addition, Defendant filed a notice of supplemental authority [D.E. 175] on December 26, 2000.

2. Plaintiff Gaston's Motion for Summary Judgment on Liability and Against Defendant on Its Affirmative Defense of After Acquired Evidence [D.E. 116], filed on October 23, 2000 (with a corrected memorandum filed on November 7, 2000). Defendant filed a Response [D .E. 130] on November 15, 2000, and Plaintiff filed a Reply [D.E. 140] on November 28, 2000.

3. Defendant Home Depot's Motion for the Imposition of Sanctions Under Rule 11, 28 U.S.C. § 1927, and/or the Court's Inherent Powers [D.E. 165], filed on December 19, 2000. Plaintiff filed a Response [D.E. 178] on January 12, 2001, and Defendant filed a Reply [D.E. 185] on January 22, 2001.

4. Defendant Home Depot's Motion to Strike the Affidavits filed in Opposition to Home Depot's Motion for Summary Judgment [D.E. 170], filed on December 20, 2000. Plaintiff

filed a Response on January 17, 2001 [D.E. 183], and Defendant filed a Reply [D.E. 189] on January 25, 2001.

5. Defendant Home Depot's Motion to Strike the Deposition Transcripts Filed by Plaintiff for Use by the Court with Respect to Pending Motions for Summary Judgment and for Fees Under 28 U.S.C. § 1927 [D.E. 176], filed on January 3, 2001. Plaintiff filed a Response [D.E. 188] on January 24, 2001.

Oral argument was held on all pending matters on January 26, 2001. This omnibus order resolves all the motions currently pending before the Court.

The Complaint, filed on May 19, 1999, alleges discriminatory treatment and discharge by Home Depot because of Gaston's race and national origin and in retaliation for his complaints of racial discrimination, and seeks relief under Title VII of the Civil Rights Act of 1967, 42 U.S.C. § 2000e, *et seq.* ("Title VII")[1] and 42 U.S.C. § 1981.[2] Jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331, federal question jurisdiction.

After careful consideration of the parties' arguments, analysis of the relevant case law, and review of the record as a

---

1. 42 U.S.C. § 2000e–2(a) makes it unlawful for an employer:
 (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or
 (2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

2. 42 U.S.C. § 1981 provides:
 (a) Statement of equal rights
 All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and en-

force contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.
(b) "Make and enforce contracts" defined
For the purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.
(c) Protection against impairment
The rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of State law.

whole, this Court concludes that summary judgment in favor of Defendant Home Depot is warranted.

## I. Background

The parties have argued extensively about the pleadings and evidence that the Court may appropriately consider in evaluating the summary judgment motions. It is necessary to resolve these disputes prior to setting forth the undisputed facts so that it is clear which pleadings, affidavits, depositions, or other documents were considered and relied upon by the Court.

The Court did not consider Plaintiff's 'controversion' of Defendant's statement of material facts not in dispute in support of its dispositive motion for summary judgment [D.E. 135] or the fourteen deposition transcripts filed by Plaintiff on December 19, 2000 'for use by the Court with respect to the pending motions for summary judgment and/or other pending matters' (*see* Plaintiff's Notice of Filing, D.E. 164; the transcripts are docketed as D.E. 149–163, inclusive). First, with regard to the controversion, the Rules of Civil Procedure do not make any allowance for the filing of such a document. *See* S.D.Fla.L.R. 7.5 ("The papers opposing a motion for summary judgment shall include a memorandum of law, necessary affidavits, and *a single concise statement of the material facts as to which it is contended that there exists a genuine issue to be tried.*") (emphasis added). Plaintiff did submit a Concise Statement of the Material Facts in Dispute in Opposition to Defendant's Mo-

tion for Summary Judgment [D.E. 136], which the Court took into consideration. Plaintiff never moved for leave of Court to file the extra 'controversion,' and, even if it had, it is clear that the document is unnecessary and adds little, if anything, towards resolution of the issues before the Court. Second, the fourteen deposition transcripts filed on December 19, 2000 have been disregarded because they are untimely, were filed without permission of the Court, and are not itemized or organized in any way that would indicate which portions are relevant and for what reasons. The fourteen depositions were filed after Plaintiff's motion for summary judgment was fully briefed and ripe and only one day before Defendant filed its reply memorandum in support of its motion for summary judgment. Therefore, all the issues were already fully briefed and the parties had already been given ample time to establish a record and put forth their arguments. Plaintiff's filing of fourteen voluminous depositions, comprising nearly 100 hours of deposition testimony, without any indication of the specific facts relied on by the Plaintiff, adds nothing to the pleadings and serves only to waste the Court's time and obfuscate the issues.

▆▆▆ It is not necessary to strike or entirely disregard, for purposes of summary judgment, any of the other documents filed by the parties. Defendant has moved to strike the affidavits filed by Plaintiff in opposition to Defendant's motion for summary judgment[3] pursuant to Fed.R.Civ.P. 56(e),[4] arguing that the affi-

---

3. The affidavits are by 12 current and former employees of Home Depot, and are attached to Plaintiff's Concise Statement of Material Facts In Dispute in Opposition to Defendant's Motion for Summary Judgment as Appendix II, Exhibits A through L.

4. Fed.R.Civ.P. 56(e) provides:
 Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served

therewith. The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits. When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

davit testimony consists almost exclusively of baseless legal conclusions, irrelevant anecdotes, speculative statements, and hearsay declarations in lieu of any facts. Rule 56(e) states that affidavits shall be made on personal knowledge, shall set forth facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Furthermore, it states that affidavits may be supplemented with depositions, answers to interrogatories, or other affidavits. To the extent any affidavit or deposition testimony is hearsay,[5] it is may not be considered for summary judgment purposes unless it would be admissible at trial for some purpose, e.g., the statement might fall within an exception to the hearsay rule, might not actually constitute hearsay at all (because it is not offered to prove the truth of the matter asserted), or it might be used solely for impeachment purposes (and not as substantive evidence). *See Macuba v. Deboer,* 193 F.3d 1316, 1323–24 (11th Cir.1999). The Eleventh Circuit has interpreted Rule 56 as "allowing otherwise admissible evidence to be submitted in inadmissible form at the summary judgment stage, though at trial it must be submitted in admissible form." *McMillian v. Johnson,* 88 F.3d 1573 (11th Cir.1996). When an affidavit submitted in support of, or opposition to, a motion for summary judgment contains inadmissible evidence, the court may strike the inadmissible portions of the affidavit and consider the rest. *See Lee v. National Life Assurance Co.,* 632 F.2d 524, 529 (5th Cir.1980).

The general relief of striking the thirteen affidavits in question in their entirety requested by Defendant is overly broad and the affidavits in question do not contain inadmissible testimony to the extent alleged by the Defendant. The more pru-

dent and required course is to consider the admissibility of relevant statements within the disputed affidavits under Rule 56(e) on an individual basis. Upon review, the Court finds that, even if the Defendant's motion to strike was denied in its entirety, the affidavits fail to create any material issues of fact that would deny summary judgment. The affidavits have been considered by the Court and determinations as to the admissibility of particular statements have been made on an individual basis and incorporated into the statement of the facts and analysis of the case, with all ambiguities and doubts resolved in favor of the Plaintiff.

The parties have not moved to strike any other evidence or exhibits submitted with the motions for summary judgment. Accordingly, the facts, taken in the light most favorable to the nonmoving party, reveal the following.

Plaintiff Fredrick Gaston ("Gaston") is a black, African–American male. In February 1998, Gaston began working as a full-time associate for Defendant Home Depot U.S.A., Inc. d/b/a The Home Depot ("Home Depot"). In 1992, Gaston was promoted to the salaried, managerial position of Assistant Store Manager ("ASM"). From early 1992 to March 1994 and then again from July 1996 until his termination in July 1997, Gaston was an ASM at Store 207, located in Cutler Ridge, Florida. In the interim, from March 1994 to July 1996, Gaston was an ASM at Store 210 in Kendall, Florida. Sometime at the end of 1996 or early 1997, Plaintiff was made the Administrative Assistant Store Manager at Store 207. The job duties of the ASM included supervising associates, working with other assistant managers and managers, and evaluating associates. Plaintiff

---

**5.** Federal Rule of Evidence 801 defines hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." There are two elements which must be present before an out of court utterance may be rendered inadmissible

as hearsay: (1) the out of court utterance must be a "statement," i.e., a verbal assertion or conduct intended as an assertion; and (2) the statement must be offered to prove the truth of the matter that it asserts. *See United States v. Cruz,* 805 F.2d 1464, 1477–78 (11th Cir.1986) (citations omitted).

never had a contract of employment and was always an "at-will" employee.

As part of his job, Gaston received Home Depot's orientation training and its Employee Handbook, as well as numerous additional periodic training courses. Home Depot has policies prohibiting harassment and discrimination, as well as policies prohibiting retaliation against someone because he or she made a complaint of harassment. Furthermore, Home Depot prohibits disrespectful, harassing, or discriminatory behavior toward associates, including using abusive or threatening behavior or language against an associate, undermining the company, management, or fellow associates, or disciplining associates on the sales floor or in front of other associates or customers. The Rules of Conduct, attached as Ex. G to Home Depot's Statement of Material Facts in Support of Home Depot's Motion for Summary Judgment ("H.D.M.F."), states that any infraction may result in discipline up to and including termination, even for a first offense. The Rules of Conduct indicate that actions like failing to treat associates with respect and abusive or threatening behavior or language against associates are more likely to result in termination.

In 1993, Gaston's mid-year review indicated that Gaston's people skills needed improvement and that he needs to learn to react better to employee confrontations. Pl.App. I in Opp. to H.D. Motion for S.J. ("Pl.App. I Opp.") Ex. 1. In 1994, Gaston received a Merchandising Assistant Store Manager Appraisal from Joe Izganics, store manager at Store 207, indicating that Gaston's people skills had improved but that he still gets defensive and tries to justify problems and needs to be more diplomatic and not handle all problems with the same level of intensity. Gaston Depo. p. 217. A performance appraisal in August of 1995 from Store Manager Dan McDevitt at Store 210 advised Gaston not to ignore employees based on some employee complaints about Gaston's performance and ranked his performance as a 2 out of a scale of 5 ("sometimes fails to meet expectations"). *Id.* at 230. After moving back to Store 207 in July 1996, Gaston received a performance appraisal from Store Manager Thomas Smith on February 17, 1997 that also ranked his overall performance as a 2 out of 5 and noted that Gaston needs to a better job of listening to others and needs better self-control when dealing with sales associates. Pl.App. I Opp.Ex. 1.

When Gaston was transferred from Store 210 back to Store 207 in July 1996, Ann Marie Campbell ("Campbell"), a Black/Jamaican female, was the Store Manager at Store 207. Campbell was promoted in October 1996 to District Manager and now holds a Vice President position at Home Depot. She is the person who terminated Gaston. Campbell Aff. ¶ 19.

Prior to Gaston's transfer to Store 207, Campbell had never worked with Gaston. Based on Campbell's observations of Gaston's behavior, she sent Gaston to a course entitled "People Skills," which took place in Atlanta, Georgia in October 1996 and addressed topics such as communication skills, avoiding micro-managing, conflict management, and handling the hiring, counseling, reviewing, and termination of an employee. Campbell Aff. ¶ 9; Defendant's Supp. Response to Plaintiff's Fourth Set of Interrogatories, no. 5. After Campbell was promoted to DM, Tom Smith became the new Store Manager for Store 207. Gaston also attended a management training course, called "ST," on February 6, 1997, and an Administrative Assistant Manager Training Program ("Admin") in May, 1997.

On May 9, 1997, District Manager Campbell and Store Manager Smith met with Gaston and told him that they had received numerous complaints from other employees about Gaston speaking down to them. Gaston was given an Associate Performance Notice, dated May 1, 1997, that states the following:

> Over the last six months, there have been several complaints from hourly associates with reference to the behavior

of their Assistant Manager, Fred Gaston. The issues raised were disrespect when he speaks "down" to them, yelling while on the sales floor, and a lack of sensitivity for store associates.

Home Depot strives to maintain an environment that fosters communication, team work, and an overall sensitivity to others. We believe that to remain successful, our associates must work in an environment of mutual respect, free of harassment and discrimination.

*GAME PLAN:*

Fred needs (sic) to become more aware of how your behavior affects the people around you. Care enough about yourself and your co-workers to ensure that our work environment is built on mutual respect. Understand the consequences of not stopping your behavior could result in disciplinary action up to, and including termination.

H.D.M.F.Ex. M. Gaston, Smith, and Campbell signed the Associate Performance Notice, and Gaston left the area for 'Associate Comments' blank. Approximately two months later, on or about July 22, 1997, Campbell met with Gaston to tell him that his behavior had not improved and that she had received numerous complaints about him. Gaston's employment was terminated, and he was presented with an Associate Performance Notice. The reason given was violation of company policies or procedures, and the Notice stated:

On May 8, 1997, I, Ann Marie Campbell, counseled Fred about the disrespectful way in which he treats the associates at his store. As of today Fred's behavior has not improved and in fact I have continued to receive numerous complaints about the disrespectful and undermining manner with which he addresses his peers and hourly associates. This behavior can no longer be tolerated. Effective immediately Fred is being relieved of his duties as an assistant manager at Store 207 and his employment with Home Depot is terminated.

H.D.M.F.Ex. R. Gaston refused to sign the Associate Performance Notice and did not write any comments in the associate comment section. Campbell and Smith did sign the form. Campbell stated in her deposition that Gaston "was not fired for any individual event," rather, he was "terminated for a pattern of harassment." Campbell Depo. p. 72–73.

The complaints received by Campbell, Smith, and Human Resources at Home Depot that allegedly led to the first performance notice are the following:

(a) Sales Associate A ("S.A.A"),[6] a white female hourly sales associate, accused Gaston of disciplining her in front of others while she was off the clock and of following her out the store and calling her "pathetic." S.A. A called Campbell and Human Resources several times to tell them that Gaston was ignoring her and harassing her at work and to demand an apology, which she eventually received.

(b) Sales Associate B ("S.A.B"), a female Black/African–American computer room associate, complained to Smith and Campbell that Gaston rewrote her annual performance review, upon which her pay was determined, based on only three weeks supervision, when another manager who had observed her for a year but recently transferred recommended a higher rating. In addition, S.A. B related an incident in which Gaston, with other employees present and right outside the room, had entered the computer office, quickly shut the window, and shouted at her about drinking a soda in the computer room.

(c) A female associate named Sales Associate C ("S.A. C") allegedly complained to Smith and Campbell that Gaston spoke demeaningly to her on the sales floor about her lifestyle. Smith also reported

---

**6.** Confidential personnel information related to current and former employees was submitted with the summary judgment motions. In order to protect the privacy of these other individuals, their names have been deleted from this published opinion and replaced by descriptive identifiers.

receiving complaints about Plaintiff playing gospel music in the mornings while the employees were preparing to open the store.

After the May 1997 performance notice and counseling session, Home Depot has alleged that they continued to receive complaints about Gaston, including the following:

(a) Sales Associate D ("S.A.D"), a male African–American sales associate, complained to Campbell that Gaston loudly disciplined him on the sales floor in front of a customer. Campbell discussed this incident with Gaston afterwards.

(b) Assistant Store Manager E ("ASM E") complained that Gaston belittled her in front of a customer and associate by stepping in and usurping her authority by taking over a check approval she was in the process of doing, and by bowing down in front of her when she tried to talk to him about it afterwards.

Gaston was written up and terminated shortly after the incident with ASM E.

## II. Standard of Review

Rule 56(c) of the Federal Rules of Civil Procedure authorizes summary judgment where the pleadings and supporting materials show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The court's focus in reviewing a motion for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir.1997). The moving party has the initial burden of informing the court of the basis for its motion and of identifying those materials that demonstrate the absence of a genuine issue as to any material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); *Tyson Foods, Inc.*, 121 F.3d at 646; *Celotex v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). When the non-moving party bears the burden of proof on an issue at trial, the moving party need not "support its motion with affidavits or other similar material negating the opponent's claim," *Celotex*, 477 U.S. at 323, 106 S .Ct. at 2553, in order to discharge this initial responsibility. Instead, the moving party simply may " 'show[ ]'—that is, point[ ] out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325, 106 S.Ct. at 2554 (citations omitted).

In response to a properly supported motion for summary judgment, "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but ... must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). Issues of fact are genuine only if a reasonable jury, considering the evidence presented, could find for the nonmoving party. *Anderson*, 477 U.S. at 247–51, 106 S.Ct. at 2510–11. If the non-moving party fails to "make a sufficient showing on an essential element of her case with respect to which she has the burden of proof," then the court must enter summary judgment for the moving party. *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2552. In determining whether to grant summary judgment, the district court must remember that, "credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Anderson*, 477 U.S. at 255, 106 S.Ct. at 2513. The court resolves all ambiguities and draws all justifiable inferences in favor of the non-moving party. *Id.*

Furthermore, summary judgment is properly regarded not as a disfavored procedural shortcut but, rather, as an integral part of the federal rules as a whole, which are designed to secure a just, speedy, and inexpensive determination of every action. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986). Although some Eleventh Circuit

opinions had previously stated that summary judgment is disfavored in employment discrimination cases, the Eleventh Circuit recently rejected that presumption and declared that "the summary judgment rule applies in job discrimination cases just as in other cases.... No thumb is to be placed on either side of the scale." *Chapman v. AI Transport*, 229 F.3d 1012, 1026 (11th Cir. Oct.2, 2000).

## III. Discussion

### A. Whether Plaintiff can state a claim under § 1981 if his employment was at-will

Defendant argues that at-will employees do not have contractual relationships with employers and that Gaston, who was concededly an at-will employee, therefore cannot sustain a claim under § 1981. There is no binding Supreme Court or Eleventh Circuit precedent that is directly on point on this issue. However, in a recent Eleventh Circuit case discussing qualified immunity on a § 1981 claim, *Bishop v. Avera*, 177 F.3d 1233, 1235–36 (11th Cir.1999), the Court noted the following in dicta:

> The Supreme Court decision in *Patterson* [*v. McLean Credit Union*, 491 U.S. 164, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989)] is arguably on point. In that case, the Court found that Patterson, who appears to be an at-will employee, fell within § 1981's protection. *See Patterson*, 491 U.S. at 185, 109 S.Ct. 2363, 105 L.Ed.2d 132. However, in light of the subsequent division in lower courts, we cannot say that *Patterson* so clearly established the law as to strip Avera [Plaintiff's supervisor] of qualified immunity.

*Bishop*, 177 F.3d at 1236 n. 6.

Given these statements by the Eleventh Circuit regarding the uncertain state of the law on this subject, it is inappropriate for the Court to dismiss Plaintiff's § 1981 claims because he is an at-will employee. The § 1981 claims can be resolved on other grounds, thereby rendering this question moot and making it unnecessary for this Court to speculate as to whether an at-will employee may maintain a § 1981 claim in this Circuit.

### B. Procedural defects in the Title VII claim

An aggrieved person who alleges an unlawful employment practice under Title VII is required to file a charge of discrimination with the EEOC within 180 days following the alleged discriminatory conduct by the employer. 42 U.S.C. § 2000e–5(e)(1). The statutory provisions that require a plaintiff to file a charge of discrimination concerning the alleged discrimination by a defendant is a threshold, "jurisdictional prerequisite to bringing suit under Title VII," aimed, in part, to ensure that the parties attempt to resolve their dispute in the first instance through methods of conciliation with the EEOC. *Gupta v. East Texas State University*, 654 F.2d 411, 413 (5th Cir.1981). The Court of Appeals for the Eleventh Circuit has squarely held that a plaintiff's "judicial complaint is limited to the scope of the administrative investigation which could reasonably be expected to grow out of the charge of discrimination." *Griffin v. Carlin*, 755 F.2d 1516, 1522 (11th Cir.1985). Absent some allegation of fact sufficient to put the defendant on notice of the nature and scope of the claim against it, the plaintiff is barred from asserting other types of claims in subsequent judicial proceedings that may bear some connection, however distinct, to the bare claim asserted in the EEOC charge. *See Murray v. John D. Archbold Memorial Hospital, Inc.*, 50 F.Supp.2d 1368, 1380 (M.D.Ga.1999).

Defendant in this case argues that Plaintiff's retaliation claim is barred because it is not set forth in the EEOC complaint and that the Court should dismiss any portion of Plaintiff's disparate treatment claims that deal with anything other than discipline and eventual discharge by Campbell which was specified in the Charge. Plaintiff argues in response that the retaliatory discharge claim is actionable under 42 U.S.C. § 1981 regard-

less of whether Plaintiff raised retaliation at the EEOC level. Furthermore, Plaintiff argues that the EEOC had sufficient facts to put it on notice of Plaintiff's retaliation claim because some of the answers by Plaintiff on the EEOC questionnaire indicated that he had complained to management that he was denied his mid-year evaluation and that he was being treated unfairly. *See* Pl.Opp.M.F.Ex. 24.

Plaintiff's April 9, 1998 Charge of Discrimination placed the date of the alleged discrimination on July 23, 1997 (earliest and latest occurrences), and stated the following:

> I am Black. I was employed by Home Depot for over nine years. I received a low performance evaluation in May 1997, was disciplined because of employee complaints in approximately, June 1997 and was discharged July 23, 1997. Similarly situated, non-Black employees were not treated in this manner.
>
> Ann Marie Campbell, District Manager, informed me that I was fired because of numerous complaints received in the last month.
>
> I believe I was discriminated against because of my race, Black in violation of Title VII of the Civil Rights Act of 1964, as amended.

H.D.M.F.Ex. S. The subsequent EEOC Notice of Charge of Discrimination indicates that the only basis for the charge of discrimination is race (national origin and retaliation are unchecked). *See id.*

 Even though Plaintiff's Charge of Discrimination only indicates an allegation of discriminatory discipline and discharge due to race, there is some indication, when interpreted in the light most favorable to the Plaintiff, that the EEOC questionnaire filled out by Gaston on April 6, 1998 was trying to state a claim for retaliation having to do with his work reviews and his complaints of unfair treatment.[7] Furthermore, Plaintiff is correct that a retaliatory discharge claim under

§ 1981 is treated as an independent cause of action and does not require exhaustion of administrative remedies, even though the analysis of retaliation claims brought under Title VII and § 1981 is identical. *See Greenwood v. Ross,* 778 F.2d 448, 455 (8th Cir.1985). However, nothing in Plaintiff's EEOC filing reflects an intention to pursue a claim of national origin discrimination. In fact, Plaintiff was quite clear that his claim was based on race, and it is not reasonable to expect that the subsequent EEOC investigation would also embrace national origin. *See, e.g., Chanda v. Engelhard/ICC,* 234 F.3d 1219 (11th Cir. 2000). Therefore, Plaintiff cannot maintain a Title VII claim based on national origin discrimination, but the remainder of Plaintiff's claims are arguably colorable. Accordingly, the Court will treat Plaintiff's Title VII disparate treatment based on race claim and retaliatory discharge claims as having been properly brought, and will proceed to a substantive evaluation of the claims.

### C. Time frame for conduct that forms the basis for the claims

Defendant argues that Plaintiff may not base his § 1981 claims on any alleged conduct that purportedly occurred prior to May 19, 1995, because of the 4–year statute of limitations on such claims, and that Plaintiff may not base his Title VII claims on any alleged conduct that occurred prior to June 13, 1997, which is 300 days prior to the filing of his charge with the EEOC.

 Plaintiff has conceded as much, but argues correctly that evidence of discriminatory acts that took place outside the statute of limitations periods for each claim may be considered as proof of discriminatory intent. As noted by the Supreme Court, "[a] discriminatory act which is not made the basis for a timely charge . . . may constitute relevant background evidence in a proceeding in which the sta-

---

7. The EEOC Charge Questionnaire filled out by Gaston on April 6, 1997 indicated that he had complained to management that he

thought his review was inaccurate and unfair. *See* Pl.App. I Ex. 24.

tus of a current practice is at issue . . . ." *United Air Lines, Inc. v. Evans*, 431 U.S. 553, 558, 97 S.Ct. 1885, 1889, 52 L.Ed.2d 571 (1977). The Eleventh Circuit specifically endorsed this view in *Allen v. County of Montgomery, Ala.*, 788 F.2d 1485, 1488 (11th Cir.1986), stating that time-barred evidence of discriminatory treatment "may be used to illuminate current practices which, viewed in isolation, may not indicate discriminatory motives." (quoting *Crawford v. Western Electric Co.*, 614 F.2d 1300, 1314 (5th Cir.1980)). Therefore, the actionable Title VII claim of discriminatory treatment is limited to Plaintiff's discharge, and the § 1981 retaliation claim is limited to events occurring after May 19, 1995, but the Court will consider events occurring outside those dates as part of Plaintiff's showing of proof.

### D. Discriminatory Discharge Claim

#### 1. Analytical Framework

■ The elements of a claim of race discrimination under 42 U.S.C. § 1981 are the same as a Title VII disparate treatment claim in the employment context. *See Peterson v. BMI Refractories*, 132 F.3d 1405, 1412 n. 13 (11th Cir.1998). It is therefore only necessary to employ one analysis in evaluating the claims. Although the Acts prohibit employers from discriminating on account of race, not all employment practices are actionable. *See Bristow v. Daily Press, Inc.*, 770 F.2d 1251, 1255 (4th Cir.1985) ("the employment discrimination laws . . . cannot be transformed into a palliative for every workplace grievance, real or imagined"). Thus, Title VII and § 1981 are not shields against harsh treatment in the workplace, nor do these statutes require the employer to have good cause for its decisions. The employer may fire an employee for a good reason, a bad reason, or no reason at all,

so long as it is not for a discriminatory reason. *Nix v. WLCY Radio/Rahall Communications*, 738 F.2d 1181, 1187 (11th Cir.1984).

In an employment discrimination case, the plaintiff bears the ultimate burden of proving that the defendant intentionally discriminated against the plaintiff. *See Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981). Courts in this circuit universally apply the burden shifting structure developed in Supreme Court cases such as *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981) (the "McDonnell Douglas/Burdine structure") to evaluate claims of discrimination based on circumstantial evidence.[8]

■ A prima facie case of disparate treatment in the workplace may be established by showing that: (1) the plaintiff belongs to a protected class; (2) he was subjected to an adverse job action; (3) his employer treated similarly situated employees outside his classification more favorably; and (4) he was qualified to do the job. *Maniccia v. Brown*, 171 F.3d 1364, 1368 (11th Cir.1999). The prima facie case must be established with enough evidence that a jury might reasonably find for the plaintiff. *See Hinson v. Clinch County, Georgia Bd. of Educ.*, 231 F.3d 821, 828 (11th Cir.2000).

■ If the plaintiff establishes a prima facie case, the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for the employment action. *See Weaver*, 922 F.2d at 1521. The defendant only has to produce, not prove, the non-discriminatory reason, and the

8. Plaintiffs may prove discrimination through either direct (which encompasses statistical evidence) or circumstantial evidence. *See Hinson v. Clinch County, Georgia Bd. of Educ.*, 231 F.3d 821, 827 (11th Cir.2000). Direct evidence is evidence that shows an employer's discriminatory intent without any

inference or presumption. *Id.* (quoting *Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1330 (11th Cir.1998)). In this case, Plaintiff has relied on circumstantial evidence and has not presented any argument or evidence regarding direct evidence of discriminatory intent.

burden is thus "exceedingly light." *Perryman v. Johnson Products Co.,* 698 F.2d 1138, 1142 (11th Cir.1983). Once defendant articulates legitimate, nondiscriminatory reasons, plaintiff must then prove that defendant's proffered explanation is a pretext for unlawful discrimination. *See St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 508, 113 S.Ct. 2742, 2752, 125 L.Ed.2d 407 (1993). Plaintiff's mere belief, speculation, or conclusory accusation that he was subject to discrimination will not create an inference of discrimination or satisfy his burden when responding to a properly supported motion for summary judgment. *Coutu v. Martin Cty. Bd. of Cty. Comm'rs,* 47 F.3d 1068, 1073–74 (11th Cir.1995).

### 2. Prima Facie Case

■■■ As noted above, to establish a discriminatory treatment/discharge claim through circumstantial evidence, Plaintiff must present evidence sufficient for a reasonable juror to find that: (1) the plaintiff belongs to a protected class; (2) he was subjected to an adverse job action; (3) his employer treated similarly situated employees outside his classification more favorably; and (4) he was qualified to do the job. Plaintiff has not satisfactorily met the third element of the prima facie case.[9]

■■■ To establish the "similarly situated" prong of the prima facie case, Gaston must show that there were employees, not within his protected class, who were similarly situated in all relevant respects, but who were treated more favorably. *See Walker v. Mortham,* 158 F.3d 1177, 1193

(11th Cir.1998); *Holifield v. Reno,* 115 F.3d 1555, 1561 (11th Cir.1997); *St. Hilaire v. The Pep Boys,* 73 F.Supp.2d 1366, 1371 (S.D.Fla.1999) ("Pep Boys II"). The burden is on the Plaintiff to show that similarly situated employees were not treated equally. *See Jones v. Gerwens,* 874 F.2d 1534, 1541 (11th Cir.1989). In determining whether employees were similarly situated and more favorably treated, the court must consider whether the employees involved in or accused of the same or similar conduct were disciplined in different ways. *Pep Boys II,* 73 F.Supp.2d at 1371.

> The most important factors in the disciplinary context are the nature of the offenses committed and the nature of the punishments imposed. We require that the quantity and quality of the comparator's misconduct be nearly identical to prevent courts from second-guessing employers' reasonable decisions and confusing apples with oranges.

*Maniccia v. Brown,* 171 F.3d 1364, 1368 (11th Cir.1999) (internal quotations and citations omitted). It has been stated that similarly situated employees "must have reported to the same supervisor as the plaintiff, must have been subject to the same standards governing performance evaluation and discipline, and must have engaged in conduct similar to the plaintiff's, without such differentiating conduct that would distinguish their conduct or the appropriate discipline for it." *Mazzella v. RCA Global Communications, Inc.,* 642 F.Supp. 1531, 1547 (S.D.N.Y.1986); quoted

---

**9.** Home Depot does not dispute, for purposes of summary judgment, that the first two elements of the prima facie case are met (i.e., Plaintiff is a member of a protected class and Plaintiff's termination constitutes an adverse job action). Home Depot has argued that Plaintiff was not qualified for the position of Assistant Store Manager because his actions as a manager violated Home Depot policies and practices during his tenure at Store 207 under the supervision of Campbell. However, Gaston was employed as an ASM by Home Depot from 1992 until his termination on July 23, 1997, a period of approximately five years. In cases where a plaintiff has held a

position for a significant period of time, qualification for that position sufficient to satisfy the test of a prima facie case can be inferred. *Rosenfield v. Wellington Leisure Products, Inc.,* 827 F.2d 1493, 1495 n. 2 (11th Cir.1987); *Damon v. Fleming Supermarkets of Florida, Inc.,* 196 F.3d 1354, 1360 (11th Cir.1999). Moreover, Defendant's arguments about how plaintiff performed the functions of his job are more completely and more appropriately considered in terms of Defendant's articulation of legitimate reasons for the discharge and Plaintiff's attempts to rebut those reasons as pretextual.

favorably in *Patterson v. Wal–Mart Stores, Inc.*, 1999 WL 1427751 at \*8 (M.D.Fla.1999) and *Sanguinetti v. United Parcel Serv., Inc.*, 114 F.Supp.2d 1313, 1317 (S.D.Fla.2000). The Eleventh Circuit has recognized that "disciplinary measures undertaken by different supervisors may not be comparable for purposes of Title VII analysis." *Jones v. Gerwens*, 874 F.2d 1534, 1541 (11th Cir.1989). Thus, although not necessarily dispositive, failure to show a common supervisor is a strong factor, depending on context,[10] against a finding that employees are similarly situated.

Plaintiff indicated at oral argument that he would concentrate his argument on three alleged comparators, Dan McDevitt, Assistant Store Manager X ("ASM X"), and Tom Smith. (Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment says that he is concentrating on two employees, McDevitt and ASM X, but also discusses Smith and briefly mentions three other potential comparators, Assistant Store Manager Y ("ASM Y"), Department Supervisor W ("D.S.W"), and Assistant Store Manager Z ("ASM Z"). Therefore, the Court has included a brief analysis of these three alternative comparators below.)[11] Upon analysis of the evidence presented to the Court, it cannot be said that any of the employees set forth as comparators by the Plaintiff were sufficiently "similarly situated" to the Plaintiff.

Plaintiff argues that McDevitt, a white Store Manager, "was so harsh and abrasive in his treatment of the Assistant Store Managers, that the District Manager, Joe Izganics and the Regional Personnel Manager held a meeting at Izganics house to discuss McDevitt's actions." Pl. Response to Def.Mtn. for S.J. p. 11. From March 1995 until October 1996, McDevitt had been demoted from District Manager to Store Manager. *See* Pl.App. I. Ex. 26. McDevitt's performance reviews in 1994 and 1995 indicated that his areas of improvement included people skills and conflict management. *Id.* Furthermore, Plaintiff has presented affidavit and deposition testimony from ASM X, an ASM under McDevitt when McDevitt was an SM, who described an incident in which ASM X and McDevitt got in a disagreement that resulted in McDevitt cursing in front of other employees and the two parties shouting and throwing chairs in the back room. Neither party was disciplined for the incident.

 Even assuming Plaintiff's version of the facts is true, it does not indicate that McDevitt and Gaston were similarly situated or that Gaston was treated unequally for similar misconduct. During the time of the incidents in question, Izganics, not Campbell,[12] was the District Manager and supervisor of McDevitt. Neither Campbell nor Smith played any role in any disciplinary decisions regarding McDevitt, a strong factor against a finding that the parties were similarly situated. Moreover, there is no valid evidence that other complaints were made about McDevitt's treatment of employees other than ASM X's

10. Home Depot owns and operates over 1000 stores in the United States and abroad and employs approximately 225,000 employees at this time. *See* Campbell Aff. ¶ 3. Given this large size, it is reasonable to expect that oversight of all management disciplinary decisions would be very difficult and that slight variations between managers would be common, if not expected. The individual decision maker is therefore an important factor to consider when assessing whether employees were similarly situated.

11. Furthermore, Plaintiff included a brief description of Frank Diaz, a Loss Prevention Supervisor, and Peter Scudutto and Angie Cabrera, two other ASMs, in his statement of Facts in Dispute in Opposition to Defendant's Motion for Summary Judgment as potential comparators. Even though Plaintiff did not discuss these examples further in his briefs, the Court has reviewed these examples and finds that they are not sufficiently similarly situated and have not committed sufficiently comparable conduct to be comparators for purposes of establishing a prima facie case.

12. Campbell was a store manager at Store 207 during the time of these alleged incidents, the same management level as McDevitt, and thus had no supervisory authority over McDevitt.

testimony.[13] On top of these facts, it is undisputed that McDevitt and ASM X were both managers, whereas the complaints about Gaston were for his treatment of hourly sales associates. Thus, the single alleged complaint about McDevitt's conduct has not been shown to be of the same quantity and quality as the complaints made against Gaston. In Gaston's case, the District Manager received multiple complaints of subordinate employee mistreatment, after which a counseling session was held. After two more complaints were received after the counseling session, the DM took steps to terminate Gaston's employment. The two cases are distinguishable, and McDevitt is not a valid comparator.

■ Plaintiff's attempt to use ASM X, a white Hispanic Assistant Store Manager, as a comparator also fails. Plaintiff argues that ASM X had four reported confrontations with his store managers before he was fired. The first was the confrontation with McDevitt that was discussed above. The second and third confrontations were with Store Manager Smith on the sales floor in front of employees and customers. Following the fourth confrontation with a store manager, ASM X was fired by District Manager Campbell.[14]

As noted above, Campbell was a store manager in another store when the incident between ASM X and McDevitt occurred. As such, ASM X did not answer to Campbell and the incidents are not comparable.[15] ASM X testified that Campbell walked in during the end of the first confrontation with Smith that was on the store floor regarding merchandising, and Smith testified that he is sure he reported the second incident between the two, which occurred in the wall coverings department after hours, to Campbell. However, there is no record evidence that any complaints were filed regarding either incident by the parties involved or by anyone else. When a formal complaint was made to Campbell by a store manager about ASM X's confrontation over his problems with attendance at work, it is undisputed that Campbell fired ASM X. Thus, there is no record evidence that ASM X was treated more favorably than Plaintiff for any conduct that could be considered comparable in quality or quantity.

■ With regard to Smith, Plaintiff has discussed him as a comparator by referring to the two incidents discussed by ASM X in which they engaged in arguments on the sales floor. Plaintiff argues that the fact that Smith, a supervisor and management employee, was not disciplined

13. ASM X testified that other assistant managers complained about McDevitt's treatment of them, his cursing, and his favoritism. *See* ASM X Depo. p. 69–70. ASM X's statements are hearsay and are not made from personal information about whether the complaints were actually made to the proper authorities or whether the content of those complaints was true.

14. Plaintiff has also brought various anonymous complaints asserting sexual harassment by ASM X and anonymous complaints asserting domestic violence charges by ASM X that were in ASM X's file to the Court's attention. These anonymous and unverified complaints about conduct of a different nature than Gaston's conduct are not sufficiently similar to assist in the establishment of Gaston's prima facie case. Furthermore, after a reported incident of sexual harassment in the workplace (biting an associate's ear) in which the associate did not file a formal complaint but was

visibly embarrassed, ASM X was given an Associate Performance Notice and a copy of the company respect policy, and warned that further incidents could result in termination. This is comparable and not less severe than the treatment of Gaston, who was given an Associate Performance Notice and counseled two months prior to his dismissal due to complaints of employee mistreatment.

15. Gaston has noted in his papers that ASM X mentioned the incident with McDevitt to Campbell and that she indicated she was okay with it and that's just the way it is at Home Depot. However, this comment was made approximately one year after the incident, when Campbell was a store manager, not a district manager, and McDevitt was a store manager who supervised them both. *See* ASM X Depo. p. 66–67. Taken in context, Campbell's comments have little relevance and do not bear on Home Depot's treatment of ASM X for the incident with McDevitt.

or fired for conduct similar to the conduct Plaintiff was accused of shows that Plaintiff was treated differently. However, even if Campbell might have been aware that Smith and ASM X had disagreed and argued, no evidence was presented to show that any complaints were ever made about Smith's treatment of employees to Campbell or to anyone else at Home Depot. The incidents between Smith and ASM X were between two management level employees, not a manager and an hourly associate. Plaintiff, on the other hand, was terminated for the combination of at least six separate complaints and was given a warning about his behavior from management. Therefore, Smith and Gaston are not similarly situated and their actions are not comparable. Given these differences, Plaintiff's attempted reliance on *Damon v. Fleming Supermarkets of Florida, Inc.*, 196 F.3d 1354, 1366 (11th Cir.1999), in which the Court stated that "evidence demonstrating that the decision-maker engaged in the same policy violation proffered for an employee's termination is especially compelling evidence of pretext," is unavailing.

Plaintiff has also argued that ASM Y, D.S. W, and ASM Z were similarly situated employees who received more favorable treatment for comparable conduct. With respect to ASM Y, a white Assistant Store Manager, Plaintiff failed to show that he was similarly situated or treated more favorably. ASM Y was demoted two levels after Campbell received a complaint that he had grabbed his crotch in a sexually explicit manner. His hourly pay rose slightly, but he lost his bonus. According to ASM Y's file, he had previously been written up for inappropriate comments and sexual harassment several years earlier. Pl.App. I. Ex. 20. With respect to the crotch grabbing incident, ASM Y presented a doctors note that purported to explain the comment and his reasons for having a painful groin. Thus, he did not have the same quantity of incidents occurring in a short time span as Gaston and he had presented a mitigating medical explanation. Under these undis-

puted facts, the situations of Gaston and ASM Y were not similar, nor were the circumstances of the disciplinary actions taken against them.

With respect to D.S. W, a department supervisor who never held a management position, Plaintiff has not shown that the parties were similarly situated. An employer is justified in holding management to a higher standard of performance, which Campbell has testified Home Depot was want to do. *See Campbell Aff.* ¶ 6; *Jones v. Winn–Dixie Stores, Inc.*, 75 F.Supp.2d 1357, 1365 (S.D.Fla.1999). Furthermore, a review of D.S. W's employee file reveals he had miscellaneous performance or procedure issues that he was written up for, but, prior to April 1997, he had never been cited for discriminatory comments or mistreatment of fellow workers. In April 1997, while Campbell was the District Manager, D.S. W was accused of making a racial slur toward a co-worker. Campbell handled the matter by meeting with D.S. W, writing a report of the incident, and demoting him from department supervisor to sales associate, with a warning that future incidents could result in termination. Thus, D.S. W did not have the same record of similar prior occurrences as Gaston and, if anything, was punished more harshly after one incident than Gaston.

Finally, Plaintiff refers to ASM Z in his Response to Defendant's Motion for Summary Judgment as another potential comparator. Even assuming ASM Z was Gaston's replacement as assistant store manager at Store 207 (which Plaintiff has not presented any evidence to substantiate), it is clear that ASM Z was not treated more beneficially than Gaston. A review of ASM Z's personnel file reveals that he had several write-ups for miscellaneous store policy violations, such as failure to punch out properly, carrying a beeper, or poor shrink reduction. *See* Pl.App. I Ex. 22. He received one performance notice and counseling session in January 1997 after Home Depot received an anonymous complaint of harassment. Then, after be-

**1372**

coming ASM under Campbell on September 25, 1997, ASM Z was fired two weeks later when Campbell received complaints from employees about his use of profanity and for creating a hostile work environment. Plaintiff thus has not demonstrated to the Court in what way ASM Z was treated more favorably than Gaston.

### 3. Legitimate, Nondiscriminatory Reasons for Action

Even if it is assumed that Plaintiff could establish a prima facie case, Defendant has proffered a legitimate, nondiscriminatory reason for Plaintiff's discipline and eventual termination which the Plaintiff has failed to sufficiently rebut. The burden on the Defendant is merely to proffer, not prove, a legitimate, nondiscriminatory reason for its actions, and the burden is thus exceedingly light. *See Meeks v. Computer Assoc. Int'l,* 15 F.3d 1013, 1019 (11th Cir. 1994).

The May 1, 1997 Associate Performance Notice and the July 22, 1997 Associate Performance Notice issued by Campbell to Gaston make it clear that (1) the store had received several complaints about Gaston's general lack of respect for the hourly associates whom he supervised, including speaking 'down' to them, yelling while on the sales floor, and being insensitive, for which Gaston was being duly warned, and (2) Gaston's failure to improve his behavior towards associates, and the continued receipt of complaints regarding disrespect and undermining behavior in the store, led to Gaston's employment termination. According to Campbell, Plaintiff was "not fired for any individual event," but was instead "terminated for a pattern of behavior for harassment." Campbell Depo. p. 72, 73.

Defendant has met its burden of proffering a legitimate, nondiscriminatory reason

for Plaintiff's termination based on its view that he had displayed a pattern of disrespectful behavior towards his fellow employees, including those he was supervising. *See Garcia–Cabrera v. Cohen,* 81 F.Supp.2d 1272, 1280–81 (M.D.Ala.2000) ("It is beyond question that an inability to get along with co-workers and demonstrated caustic or rude behavior is a legitimate, nondiscriminatory reason for an employment decision."). Far from merely making naked assertions of such disrespectful behavior, Defendant has presented written notices to the Plaintiff and testimony documenting the events. This is more than sufficient to satisfy the Defendant's burden at this stage.

Plaintiff has attempted to demonstrate that the proffered reasons are 'flimsy' and that he in fact did not commit the policy and procedure violations of which he has been accused by presenting his version of each separate incident. However, he has not refuted the fact that Defendant did receive the identified complaints about Gaston's treatment of other employees. All Defendant has to show to successfully rebut the prima facie case is that it had good reason to believe the employee committed the violation. *See Jones v. Gerwens,* 874 F.2d 1534, 1540 (11th Cir.1989) (quoting *Turner v. Texas Instruments, Inc.,* 555 F.2d 1251, 1256 (5th Cir.1977) ("Even if [employer] wrongly believed that [Title VII claimant] violated this policy, if [employer] acted on this belief it was not guilty of racial discrimination.")).

Additionally, Plaintiff argues that Defendant's proffered reason for the termination is not legitimate because Plaintiff's conduct did not fall within the definition of 'harassment' set forth in the dictionary,[16] Home Depot management training manuals,[17] or employment discrimination law.[18]

---

**16.** According to Plaintiff, American Heritage Dictionary defines "harass" as:
 1. To irritate or torment persistently. 2. To wear out; exhaust. 3. To exhaust (an enemy) by repeated attacks.

**17.** In Home Depot's supervisor program, Respecting Our Home Depot Family (*See* Pl.App.

to Pl.Mtn. for S.J.Ex. 6), the Section entitled What Is Harassment defines "General Harassment" as:

 Harassment is any verbal, non-verbal, physical, or procedural abuse of any employee, associate, customer, or vendor on the basis

However, Plaintiff has failed to take into account the description of harassment set forth in the Home Depot Orientation Guide. The Guide describes discrimination and harassment to be terminable offenses and includes "failing to treat associates, customers, or vendors with respect" as an example of terminable conduct. *See* H.D.M.F.Ex. G. Plaintiff's conduct falls within harassment if Defendant's use of the term is interpreted to encompass this broad definition, which Home Depot promulgated to all its employees in the Orientation Guide. Furthermore, it is apparent from the context of Plaintiff's termination what conduct the harassment is referring to and which incidents caused the dismissal. Thus, even if Gaston's conduct did not constitute repeated incidents against any particular employee and was not based on race, color, age, sex, religion, national origin, or disability, Defendant characterized the conduct in its performance notices as 'disrespectful' and undermining, conduct which is a terminable offense under Home Depot's published policies.

### 4. Pretext

Once the Defendant proffers a legitimate, nondiscriminatory justification for the Plaintiff's employment termination, the presumption of discrimination is eliminated and the burden shifts to the plaintiff to produce evidence sufficient for a reasonable factfinder to conclude that the employer's reasons are pretext for discrimination and that the employer thus had a discriminatory intent. *See Chapman v. AI Transport,* 229 F.3d 1012, 1024 (11th Cir. 2000). In other words, the plaintiff must show that "a discriminatory reason more likely than not motivated [the employer] to [terminate him]." *Burdine,* 450 U.S. at 256, 101 S.Ct. at 1095. Such proof may be direct or circumstantial. *Smith v. Horner,* 839 F.2d 1530, 1536 (11th Cir.1988). In examining the employer's proffered rea-

sons, the court does not sit as a super-personnel department, and must accept the employer's stated reasons as given. As stated by the Eleventh Circuit recently, "[p]rovided that the proffered reason is one that might motivate a reasonable employer, an employee must meet that reason head on and rebut it, and the employee cannot succeed by simply quarreling with the wisdom of that reason." *Chapman,* 229 F.3d at 1030.

Plaintiff has set forth a laundry list of arguments for why the Defendant's proffered reason for Gaston's discharge is pretext for racial and national origin discrimination. Plaintiffs arguments are: (a) the reasons relied on by Defendant were 'trivial,' and other Assistant Managers were treated more leniently; (b) three of the employees who complained to Campbell (S.A. A, S.A. B and S.A. D) were allegedly counseled by Plaintiff about not properly performing their work, and the fourth, ASM E, was known by Smith to need assistance with check approvals and had allegedly made a previous false claim about Plaintiff; (c) there are not individual records of every complaint; (d) Campbell did not react quickly to the S.A. A complaint, and Human Resource Manager Konchak never contacted Plaintiff about it; (e) the Associate Performance Notice dated May 1, 1997 was not given to Gaston until May 8, 1997, so it had to have been written before hearing his side of the story; (f) Campbell cannot remember the exact time frame for all the complaints, so there may not have been 'several,' as indicated in the performance notices, and she may have been 'gilding the lily'; (g) the jury could conclude Campbell only called the reason for the discharge 'harassment' because harassment carries a discharge penalty and would thus justify the termination; (h) Smith's memory was incomplete regarding the S.A. A, S.A. B, S.A. C,

---

of race, color, age, sex, religion, national origin, or disability.

**18.** E.g., the conduct must by based on one of the protected classes and must be so severe and pervasive as to create a hostile work

environment. *See, e.g., Succar v. Dade County School Bd.,* 60 F.Supp.2d 1309, 1313 (S.D.Fla.1999); *Nuri v. PRC, Inc.,* 13 F.Supp.2d 1296, 1300 (M.D.Ala.1998).

S.A. D, and ASM E incidents, as well as the disciplinary response by Home Depot; (i) Campbell did not recall the details of all the complaints; (j) Konchak, the Human Resources Manager, and Pennington, the EEO Specialist for the Southeast Division, could not recall all the witnesses they interviewed during the EEOC investigation of Gaston's discrimination charge and Home Depot did not turn over documents that the Court ruled it was not required to produce; (k) Plaintiff takes issue with how Home Depot conducted its investigation and responded to the EEOC after Gaston was terminated and points to minor alleged inconsistencies in Home Depot's response to EEOC inquiries; (l) Defendant did not produce any written complaint from S.A. D about Gaston's treatment or written notes by Campbell regarding verbal complaints about Gaston, and Plaintiff speculates that Defendant caused the hypothetical documents to disappear; (m) several former Home Depot employees testified through affidavit that yelling and cursing on the store floor was commonplace, but that they never heard Gaston curse; ASM X, an ASM, had a verbal confrontation with McDevitt, the SM, in which ASM X threw and broke a chair, but was not disciplined by Campbell; Neither Smith nor ASM X were disciplined after two later verbal arguments on the store floor; (n) Defendant has not cited another case where a non-black employee was discharged for the same offenses as Plaintiff; (o) some of the measurements of store performance in Plaintiff's 1997 annual review indicated that Store 207 was below goal overall, but that Plaintiff's supervised departments were above goal, but SM Smith believed this was due to good performances by the department supervisors that worked below Gaston; (p) Plaintiff was transferred to the Administrative Assistant Store Manager position from the Assistant Store Manager, and thus supervised more associates, in the months immediately prior to his discharge; (q) the reasons for the discharge allegedly changed; and (r) Plaintiff was the only

person sent to people skills training in October 1996.

The bulk, if not all, of these arguments are flawed, immaterial, or unpersuasive. Plaintiff's argument (a) is opinion and does not hold up to scrutiny of the evidence, as demonstrated by the Court's prior discussion of similarly situated individuals; (b), even if assumed to be true, is immaterial and does not refute the fact that the complaints were made and that the incidents complained of did happen; (c) is immaterial as Smith was not the primary decision maker, the deposition question referred to by Plaintiff was in regards to Smith personally documenting complaints, not Home Depot's business practices, and Smith did not receive the bulk of the complaints that led to Gaston's termination; (d) is speculative and unsupported by the record; (e) the statement that Campbell did not hear Gaston's side of the story is unsupported by the record and lends little to Plaintiff's argument; (f) is entirely speculative and unsupported by the record; (g) is speculative and immaterial given the context of the use of harassment and the description of the term in Home Depot's Orientation Manual; (h) is immaterial or of minimal probative value given that Campbell was the primary decision maker; (i) is immaterial or of minimal probative value given the lapse in time between the events and the deposition (3 years); (j) is immaterial, unsupported by the record, and purely speculative; (k) is immaterial; (l) is immaterial, unsupported, and speculative, as there is no evidence such records exist and Plaintiff never moved to compel them; (m) has little value, as discussed in the Court's section on similarly situated individuals; (n) failure to cite a discharge for similar misconduct by another manager may just as easily indicate that no other manager had as many formal complaints lodged against him or her, and there is no record evidence of an EEOC request for similar cases; (o) is speculative and does not indicate pretext with respect to punishments for the employee complaints against Gaston; (p) has little or no value in terms of

pretext, except to indicate Defendant was giving Plaintiff an opportunity to advance despite some prior behavioral complaints; (q) are not inconsistent, but instead indicate slightly different ways of phrasing the same problem: repeatedly disrespecting and mistreating subordinates and fellow employees; (r) is speculative and not supported by the record.

■ Plaintiff has failed to directly address the reasons proffered by Defendant and has not carried his burden of showing how a reasonable factfinder could find that the proffered reasons are pretextual. Attempts by the Plaintiff to show that the incidents and complaints cited by the Defendant lack merit fail to address the undisputed facts that the complaints occurred over a short period of time and involved allegations that Gaston disrespected and mistreated the hourly associates ˙ at his store. The Eleventh Circuit has repeatedly emphasized that:

> No matter how high-handed its decisional process, no matter how mistaken the firm's managers, the [civil rights laws] do[ ] not interfere. Rather our inquiry is limited to whether the employer gave an honest explanation of its behavior.... An employer may fire an employee for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason.... We are not in the business of adjudging whether employment decisions are prudent or fair.

*Chapman,* 229 F.3d at 1030 (citations and quotes omitted). In this case, Plaintiff has not demonstrated how or why the nondiscriminatory reasons given by Home Depot are pretext.

Furthermore, even if the Plaintiff's arguments for pretext are fully accepted and could be found to cast doubt on the believability of the Defendant's stated reasons for firing Gaston, the Defendant would still be entitled to summary judgment because Plaintiff has not presented any additional evidence to indicate that Home Depot discriminated against him based on his race or national origin. Recently, the Eleventh Circuit noted that it may be enough in some cases to "infer the ultimate fact of discrimination from the falsity of the employer's explanation" without the introduction of additional, independent evidence of discrimination if the prima facie case has been established and there is sufficient evidence to reject the employer's explanation. *Hinson v. Clinch County, Ga. Bd. of Educ.,* 231 F.3d 821, 831 (11th Cir.2000). Factors for the court's consideration in making such a judgment include "the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case and that properly may be considered." *Id.* at 832 (quoting *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 120 S.Ct. 2097, 2109, 147 L.Ed.2d 105 (2000)). In this case, even if the Court were to find that Plaintiff had met its burden of presenting a prima facie case, that case is exceedingly weak. Plaintiff's proposed comparators were generally not similarly situated or have been punished just as, if not more, severely than Plaintiff. As for the probative value of Plaintiff's proof that the Defendant's explanation is false, Plaintiff's case is largely a semantic one and includes little or no probative evidence that directly addresses the fact that Defendant did indeed receive several complaints from employees about Defendant's disrespect for fellow workers. In addition, Campbell, the District Manager with the authority to fire Gaston and the one who made the ultimate disciplinary decision and implemented it, is Black, the same race as the Plaintiff. Plaintiff has not presented any additional, independent evidence in its argument of pretext that Defendant acted with discriminatory animus or intent in the discharge of Gaston. Absent such evidence, it is clear that Plaintiff has not sufficiently demonstrated that this is a case where a prima facie case, combined with doubt as to the truth of the employer's proffered reason, are sufficient

to carry it's burden and avoid summary judgment.

## E. Retaliation Claim

### 1. Analytical Framework

 To establish a claim for retaliation, Plaintiff must show that: (1) he engaged in a statutorily protected activity; (2) an adverse employment action occurred; and (3) the adverse action was causally related to the protected activity. *See Little v. United Tech.*, 103 F.3d 956 (11th Cir.1997); *Goldsmith v. City of Atmore*, 996 F.2d 1155, 1163 (11th Cir.1993). To satisfy the causal connection requirement, Plaintiff must show that his supervisors were actually aware of the protected expression at the time they allegedly took the adverse employment action. *See Goldsmith*, 996 F.2d at 1163; *Strickland v. Water Works and Sewer Bd. of the City of Birmingham*, 2001 WL 50433 at * 6 (11th Cir.2001). Once Plaintiff establishes a prima facie case, Defendant must proffer a legitimate, non-discriminatory reason for the adverse employment action. *See EEOC v. Reichhold Chemicals, Inc.*, 988 F.2d 1564, 1571–72 (11th Cir.1993). If Defendant offers legitimate reasons for the employment action, Plaintiff must then demonstrate that Defendant's proffered explanation is a pretext for retaliation. *See Goldsmith*, 996 F.2d at 1163.

### 2. The Prima Facie Case

 Plaintiff alleges that his discharge was in retaliation for three complaints of discrimination. The first took place in later 1996 or early 1997, around the time Gaston received his annual review, and was a complaint that he had not received his mid-year evaluation (which is non-pay related) in October 1996 from McDevitt. The second was a complaint made to Campbell sometime in 1997 about the different standards for Blacks, unequal pay, discipline, and appraisals, and failure of McDevitt to provide the October 1997 mid-year review. The third was a complaint made to Smith sometime in 1997 about Smith's February 1997 evaluation and unequal treatment. The adverse action is alleged to be Plaintiff's discharge on July 22, 1997.[19] According to Plaintiff, the proximity in time between his complaints and the May 8, 1997 Adverse Performance Notice and July 22, 1997 termination should be sufficient to constitute evidence of a causal connection.

 Even if it is assumed that Plaintiff's three complaints constituted statutorily protected actions and that Plaintiff's discharge was an adverse employment action, thus satisfying the first two prongs of the prima facie case, Plaintiff has failed to sufficiently establish the third prong: a causal connection. First, the causal connection is severed by the multiple com-

---

19. Plaintiff did not specifically argue that the failure to provide an October 1996 mid-year evaluation and his low evaluation score in February 1997 were acts of retaliation, instead limiting his discussion to a citation of his complaints about those two events as part of the proof of his protected actions. Even if the Court were to consider them as proposed acts of retaliation, Plaintiff would have failed to satisfy the second prong, requiring an adverse employment action, of the prima facie case of retaliation with respect to these two incidents.

Although the Eleventh Circuit has stated that Title VII's protection against retaliatory discharge extends to adverse actions which fall short of ultimate employment decisions and that actions such as undeserved negative job evaluations, demotions, disadvantageous transfers, or toleration of harassment are actionable under the retaliation clause, employment actions must still meet some threshold level of substantiality to be cognizable under the anti-retaliation clause. *See Graham v. State Farm Mutual Ins. Co.*, 193 F.3d 1274, 1283 (11th Cir.1999). The October 1996 failure to provide a mid-year evaluation and February 1997 negative evaluation do not meet the "threshold level of substantiality" required by the Eleventh Circuit in *Wideman v. Wal–Mart Stores, Inc.*, 141 F.3d 1453 (11th Cir.1998). Neither action constitutes an unwarranted negative job evaluation or disadvantageous transfer of responsibilities, and there is no record evidence that Plaintiff suffered any repercussions from either of these actions.

plaints received by Defendants about Plaintiff's treatment of employees, which occurred both before and after Plaintiff's alleged complaints about discriminatory treatment. *See Kiel v. Select Artificials, Inc.*, 169 F.3d 1131, 1136 (8th Cir.1999) (stating that intervening unprotected conduct, such as violating an employer's rules or disrupting the workplace, can "erode[ ] any causal connection that was suggested by the temporal proximity of [the] protected conduct and [the] termination."). Second, Plaintiff's only argument for establishing a causal connection, the temporal proximity of the protected actions and the discharge, is not persuasive given the gap in time between the complaints, which were in approximately February 1997, and the May 1997 disciplinary notice and July 1997 termination. *See Richmond v. ONEOK, Inc.*, 120 F.3d 205, 209 (10th Cir.1997) (holding that a "three-month period between the [protected] activity and termination, standing alone, does not establish a causal connection").

### 3. Legitimate, Nondiscriminatory Reasons and Pretext

██ Even if it is assumed that Plaintiff could establish a prima facie case of retaliation, Home Depot has proffered a legitimate, nondiscriminatory reason for the May 1997 disciplinary warning and July 1997 termination based on its receipt of employee complaints of mistreatment and disrespect, including additional complaints after Gaston was given a warning that further problems could result in termination. *See Willis v. Conopco, Inc.*, 108 F.3d 282, 287 (11th Cir.1997). Thus the burden shifts to the Plaintiff to establish that the Defendant's reason is pretext for discrimination, and Plaintiff has failed to present any argument or evidence in this regard. Accordingly, summary judgment in favor of Defendant on Plaintiff's retaliation claim is warranted.

### F. Remaining Arguments

██ Defendant argued in its motion for summary judgment that any hostile work environment claim, assuming there was one, would fail as a matter of law. However, Plaintiff conceded in his response that he has not and does not make a claim for hostile work environment, thereby mooting that issue. The parties also argued in each of their motions for summary judgment over the applicability of a mixed-motives or after-acquired evidence defense. In essence, the mixed-motives defense permits a Defendant to prevail in an employment discrimination case even if the plaintiff provides evidence that the defendant was motivated in part by an impermissible consideration in making an adverse employment decision, if the defendant can prove by a preponderance of the evidence that it would have made the same decision even in the absence of the discriminatory consideration. *See Pulliam v. Tallapoosa County Jail*, 185 F.3d 1182, 1184 (11th Cir.1999). The Court need not reach a decision on the merits of the parties' arguments with respect to the mixed-motives defense because it has already been shown that Defendant did not base its employment decisions on an impermissible consideration. Furthermore, the above findings also alleviate the need for the Court to reach the merits of Defendant's arguments with regard to Plaintiff's entitlement to punitive damages in light of *Kolstad v. American Dental Ass'n*, 527 U.S. 526, 119 S.Ct. 2118, 144 L.Ed.2d 494 (1999).

Accordingly, it is

**ORDERED AND ADJUDGED** that Defendant Home Depot U.S.A., Inc.'s ("Home Depot") Motion for Summary Judgment [D.E. 112] is GRANTED and Plaintiff Gaston's Motion for Summary Judgment on Liability and Against Defendant on Its Affirmative Defense of After Acquired Evidence [D.E. 116] is DENIED. Final Judgment will be entered by separate order. It is further

**ORDERED AND ADJUDGED** that Defendant Home Depot's Motion for the Imposition of Sanctions Under Rule 11, 28 U.S.C. § 1927, and/or the Court's Inherent

**1378**

Powers [D.E. 165] is DENIED. It is further

**ORDERED AND ADJUDGED** that Defendant Home Depot's Motion to Strike the Affidavits filed in Opposition to Home Depot's Motion for Summary Judgment [D.E. 170] is DENIED. It is further

**ORDERED AND ADJUDGED** that Defendant Home Depot's Motion to Strike the Deposition Transcripts Filed by Plaintiff for Use by the Court with Respect to Pending Motions for Summary Judgment and for Fees Under 28 U.S.C. § 1927 [D.E. 176] is GRANTED.