Hirame ST. HILAIRE and Jenise Selby, Plaintiffs,

v.

THE PEP BOYS—MANNY, MOE AND JACK, a Pennsylvania corporation, Val Santos, Chris Hubacher, Ken Racik and Frank Romano, Defendants.

No. 97–6910–Civ–GOLD/SIM.

United States District Court,
S.D. Florida,
Miami Division.

Sept. 2, 1999.

Saul Smolar, Ft. Lauderdale, FL, for plaintiffs.

Mark Zelek, and Devand A. Sukhdeo, Morgan, Lewis & Bockius, LLP, Miami, FL, for defendants.

### ORDER GRANTING MOTION FOR SUMMARY JUDGMENT

GOLD, District Judge.

THIS CAUSE is before the Court upon Defendants' Motion for Summary Judgment Against Plaintiff Jenise Selby [D.E. # 43]. Plaintiff, Jenise Selby ("Selby"), filed this lawsuit against her former employer, the Pep Boys—Manny, Moe and Jack, alleging that they violated 42 U.S.C. § 1981 (hereafter § 1981) by terminating her based on her race while failing to discipline or terminate white employees who had committed the same offense.[1]

---

1. Selby's claims are not directed against any of the individual Defendants.

Defendants contend that they are entitled to summary judgment on all claims because Selby cannot meet her burden to present a prima facie case on the disparate treatment issue.

Jurisdiction of the Court is invoked pursuant to 28 U.S.C. § 1331. After careful consideration of the parties' arguments, the relevant case law, and the record as a whole, the Court concludes that Defendants' Motion for Summary Judgment against Selby should be granted.

## I. Factual and Procedural Background

Selby's claims arise out of her employment with Defendant Pep Boys as a Customer Service Representative at the Lauderdale Lakes store. The present action was initiated by filing a four-count Complaint on July 28, 1997. An amended, four-count Complaint was filed on November 12, 1997.[2] Selby's claim arises only in Count III, and alleges disparate treatment in violation of § 1981. In support of her claim, Selby states that she was terminated, allegedly for misusing her employee discount, while other, white employees, who similarly misused their employee discounts, were neither disciplined nor terminated.

On May 1, 1994, Selby was hired by Pep Boys as a part-time cashier (Deposition of Selby, dated December 8, 1998 at 26–28 [hereafter Depo.]; Exhibit 6 to Depo.). Selby received the Pep Boys Employment Guide which contains the Pep Boys' policy on employee discounts (Depo. at 30). The Pep Boys' employee discount policy states as follows:

> As a Pep Boys employee, you're entitled to a 20% discount on your purchases at Pep Boys stores, beginning on your date of hire. The discount applies to both merchandise and services. (Marked down, priced to meet competition, or sale items, as well as certain other designated items may be excluded.)
> This benefit is for your personal use and the personal use of your spouse, dependent children and/or dependent parents.

> While personal use includes purchasing gifts for others, you may not use your discount privilege to buy merchandise for resale.

(Depo. at 30; Exhibit 8 to Depo.).

On March 3, 1996, Selby was promoted to full-time customer service representative (Depo. at 26–28, 36; Exhibit 6 to Depo.). While Selby worked at Pep Boys, she also worked full-time for the Willowwood Retirement Home, in which job she continued until October 1997 (Depo. at 15–16, 24–25, 92–93).

On April 6, 1997, Selby gave her Social Security Number to Customer Service Representative Rukeya Williams and asked Williams to use Selby's 20% employee discount on purchases made by Selby's friend, Audrey Brown (Depo. at 29, 38, 41, 43, 52–53). While Selby referred to Brown as her stepmother, they were not related, just close friends (Depo. at 38–39). On April 7, 1997, while Selby was absent from work, Brown used Selby's discount privileges to receive a discount of approximately $14 (Depo. at 41–43, 52). Williams stated that she allowed Brown to use Selby's employee discount just one time because she and Selby were not only co-workers, but friends (Depo. at 42).

While at work on the evening of April 9, 1997, Selby was directed to speak to Ed Riley of the Loss Prevention Department (Depo. at 47). Selby knew she was being summoned because of the employee discount given to Brown (Depo. at 51). Riley confronted Selby with information obtained from Williams regarding purchases by Brown, and asked about Selby's understanding of the employee discount policy. Selby replied that the discount was available to members of an employee's immediate family who lived with the employee (Depo. at 50). Riley told Selby to write a statement indicating that she was wrong to let Brown use her employee discount, and that she would never do it again (Depo. at 53). Riley and Selby also discussed whether Selby was related to Brown (Depo. at 55–56). Both Selby and

**2.** Plaintiffs Witter and Ramos were dismissed   from the case with prejudice (D.E.# 35).

Williams offered to repay the discounted amount (Depo. at 52–53). Pursuant to Pep Boys' policies, Riley sent Selby home until further instruction from corporate headquarters concerning any disciplinary action (Depo. at 57).

On April 10, 1997, Riley told Selby that the company felt she should be discharged because her violation of the employee discount policy was serious (Depo. at 58). Selby protested that the punishment was overly harsh and that she was going to contact a lawyer (Depo. at 58–59). Riley told her that store manager Michael Dorfman would give her a great recommendation for future employment (Depo. at 62).

Selby then went to the store and confronted Dorfman, telling him that she was upset (Depo. at 59–60). Dorfman said that if it was his decision, he would take her back, but that he could not override a decision made by headquarters (Depo. at 61). Dorfman confirmed that he would give her a great recommendation (Depo. at 62–63).

Selby believed that she had been fired because of her race, and not because she misused her employee discount (Depo. at 64, 102). She thought that Riley and Dorfman had fired her because Riley would not tell her who had ordered her discharge, and because she had heard that Dorfman had a lot of authority as to personnel matters (Depo. at 75).

She stated that Service Manager Ken Racik used his employee discount for his father, whom she believed did not live with Racik (Depo. at 64–68, 77, 113–14). She did not know whether Racik gave his father the merchandise as a gift (Depo. at 68). She also believed that Second Assistant Manager Mike Gaudio had used his discount for his sister, who lived with him (Depo. at 69–71, 73, 77, 112). Selby claimed that, after she was fired, Gaudio had told her that he never knew that an immediate family member had to be an employee's dependent to use the employee's discount (Depo. at 69, 112). Selby did not know if Gaudio gave the merchandise to his sister as a gift (Depo. at 74).

Selby did not believe either Riley or Dorfman was aware of Racik's and Gaudio's use of the employee discount at the time Selby was fired, and she did not believe that "corporate" was aware of this before she went to her lawyers at the end of April (Depo. at 71–72, 75–76). In April, 1997, Dorfman and Riley had no knowledge of any misuse of the employee discount by Racik and/or Gaudio (Declarations of Michael Dorfman and Edward Riley, dated January 4, 1999, Exhibit B to Defendants' Motion for Summary Judgment against Plaintiff St. Hilaire).

On the advice of her friend and co-worker, Hirame St. Hilaire, Selby then called Jim McKnight at "corporate" to ask why she had been fired (Depo. at 77–79). McKnight told her she was wrong to use her employee discount for a non-relative, and said he would call her back (Depo. at 80–81).

Selby, again taking St. Hilaire's advice, called Tom Ruggieri, Pep Boys' Vice President for Human Resources, and explained her situation, and that she had spoken to McKnight (Depo. at 81). Ruggieri said he knew nothing of her situation, spoke to McKnight, whose office was across the hall, and asked her what was going on in the store (Depo. at 81–82). She told him that all the managers were courteous with the exception of a previous manager, Val Santos (Depo. at 82). Ruggieri told Selby that District Operations Manager Greg Wourms was out of town, but that he would discuss the matter with Wourms upon his return. Ruggieri told Selby to enjoy her weekend, because it might be the only one she had off, and that he would try to get back to her early in the week (Depo. at 83).

During the week of April 7, 1997, Selby told Inn at the Park she was interested in beginning employment. She began working there full-time on April 14, 1997 (Depo. at 10–11, 92).[3]

---

**3.** She had filed a job application at Inn on the

Park on November 10, 1995, and kept in

On April 23, 1997, Ruggieri called and asked Selby to meet with Wourms in the Davie store at 3:00 p.m. (Depo. at 83). During their meeting, Wourms offered Selby reinstatement to the same position, with the same salary, but at a different location (Depo. at 83–85).[4] He said he would investigate which stores had a spot for her, but mentioned the Coral Springs and Sunrise stores (Depo. at 84–86, 88–89).

Selby did not believe that there was really a job for her at either store mentioned, and did not want to work further away from her home than the Lauderdale Lakes store, a two or three minute commute (Depo. at 86, 96–97, 102–03, 119). Selby never called Wourms back to ask if he had found a position for her at another store (Depo. at 91). Because Wourms had intervened, she did not call Ruggieri when she thought the reinstatement offer was not real (Depo. at 108).

On May 1, 1997, while Selby was working full-time at both Willowwood and Inn on the Park, she sent Pep Boys a letter declining its offer of reinstatement (Depo. at 89–90, 99–101; Exhibit 15 to Depo.). Selby also called Wourms and left him a message informing him of her decision (Depo. at 99). No one at Pep Boys asked her to write the letter (Depo. at 101). On May 16, 1997, Ruggieri sent Selby a letter acknowledging that she had rejected Pep Boys' offer of reinstatement (Depo. at 4–5, 104–05; Exhibit 3 to Depo.). Selby subsequently filed a Charge of Discrimination with the EEOC (Depo. at 109).

## II. Standard for Summary Judgment

Rule 56(c) of the Federal Rules of Civil Procedure authorizes entry of summary judgment where the pleadings and supporting materials show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *See Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986). Summary judgment is properly regarded not as a disfavored procedural shortcut but, rather, as an integral part of the federal rules as a whole, which are designed to secure a just, speedy, and inexpensive determination of every action. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986). The court's focus in reviewing a motion for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir.1997). The moving party has the burden to establish the absence of a genuine issue as to any material fact. *See id.*, at 646 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970)). Once the moving party has established that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law, the burden shifts to the non-movant to come forward with a response setting forth "specific facts" showing that there is a genuine issue for trial. Thus, the party opposing summary judgment may not rest upon the mere allegations or denials of the pleadings, but must present sufficient evidence favoring the non-moving party for a jury to return a verdict in favor of that party. *See Anderson*, 477 U.S. at 249, 106 S.Ct. at 2511. Conclusory allegations will not suffice to create a genuine issue. There must be more than a scintilla of evidence; there must be "substantial conflict in evidence to support a jury question." *Tidwell v. Carter Prods.*, 135 F.3d 1422, 1425 (11th Cir. 1998) (quoting *Carter v. City of Miami*, 870 F.2d 578, 581 (11th Cir.1989)). Ultimately, "[w]here the record taken as a whole could not lead a rational trier of fact

touch with the owner but did not begin working there immediately because she was already working two full-time jobs, at Pep Boys and at Willowwood Retirement Home (Depo. at 11, 104).

4. Selby knew that on the same day, Williams had received the same offer of reinstatement with relocation from Wourms and had accepted it (Depo. at 106–07).

to find for the non-moving party, there is no genuine issue for trial." *Allen,* 121F.3d at 646.

### III. Discussion and Analysis

Title VII prohibits employers from discriminating on account of race, gender, or national origin when hiring, discharging, and promoting its employees. *See* 42 U.S.C. § 2000e–2(a)(1). The Supreme Court has held that Title VII is intended to eradicate not only economic and tangible discrimination, but the entire spectrum of disparate treatment, which includes requiring people to work in a racially hostile or abusive environment. *See Meritor Savings Bank v. Vinson,* 477 U.S. 57, 64, 106 S.Ct. 2399, 2404, 91 L.Ed.2d 49 (1986). However, not all employment practices are actionable under Title VII. *See Bristow v. Daily Press, Inc.,* 770 F.2d 1251, 1255 (4th Cir.1985) ("the employment discrimination laws ... cannot be transformed into a palliative for every workplace grievance, real or imagined ...""). Thus, Title VII and § 1981 are not shields against harsh treatment in the workplace, nor do these statutes require the employer to have good cause for its decisions. The employer may fire an employee for a good reason, a bad reason, or no reason at all, so long as it is not for a discriminatory reason. *Nix v. WLCY Radio/Rahall Communications,* 738 F.2d 1181, 1187 (11th Cir.1984).

In an employment discrimination case, the plaintiff bears the ultimate burden of proving that the defendant intentionally discriminated against the plaintiff. *See Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 253, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981). Because direct evidence of discrimination can be difficult to produce, the Supreme Court, in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), created a framework on the burden of production and order of presentation of proof to analyze circumstantial evidence of discrimination. Where, as here, there is no direct evidence of racial discrimination, "the plaintiff must produce sufficient evidence to support an inference that the defendant employer based its employment decision on an illegal criterion." *Williams v. Vitro Servs. Corp.,* 144 F.3d 1438, 1441 (11th Cir.1998). Under *McDonnell Douglas,* if the plaintiff creates an inference of discrimination by establishing a prima facie case, the burden then shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the employment action, and if it does, the defendant is entitled to summary judgment unless the plaintiff persuades the trier of fact that the defendant intentionally discriminated against the employee despite the defendant's proffered lawful reason for its employment decision. *See Walker v. Mortham,* 158 F.3d 1177, 1183–84 (11th Cir. 1998), *petition for cert. filed,* 67 U.S.L.W. 3625 (Mar. 31, 1999) (No. 98–1599). To satisfy this burden, the defendant need only produce evidence which would allow the trier of fact rationally to conclude that the employment decision had not been motivated by discriminatory animus. *See Burdine,* 450 U.S. at 257, 101 S.Ct. at 1096.

### A. Prima Facie case

■ To establish a prima facie case of racial discrimination under Title VII, Selby must show that: 1) she belongs to a racial minority; 2) she was subjected to an adverse job action; 3) Pep Boys treated similarly situated employees outside her classification more favorably; and 4) she was qualified to do the job. *See McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. at 1824; *Holifield v. Reno,* 115 F.3d 1555, 1561 (11th Cir.1997). The legal standard which governs Selby's claim is the same which governs a claim made under Title VII. *See Vincent v. Wells Fargo Guard Services, Inc. of Fla.,* 3 F.Supp.2d 1405, 1413 (S.D.Fla.1998) ("The test for intentional discrimination in suits under § 1981 is the same as the formulation used in Title VII discriminatory treatment cases").

■ Pep Boys argues that Selby cannot establish a prima facie case of unlawful race discrimination because she cannot of-

fer evidence of a similarly situated and similarly mistreated employee, and she has shown no evidence of racial bias on the part of Pep Boys. For purposes of summary judgment, the parties do not dispute that Selby is a member of a protected class, that she suffered an adverse job action, and that she was qualified to do her job. The first focus of disagreement concerns the "similarly situated" element. Pep Boys argues that Selby cannot show that there were similarly situated employees who were disciplined in a less severe manner.

To establish a prima facie case, Selby must show that there were employees, not within her protected class, who were similarly situated in all relevant respects, but who were treated more favorably. *See Walker*, 158 F.3d at 1193; *Holifield*, 115 F.3d at 1561. In determining whether employees were similarly situated and more favorably treated, this Court must consider whether the employees involved in or accused of the same or similar conduct were disciplined in different ways.

> The most important factors in the disciplinary context are the nature of the offenses committed and the nature of the punishments imposed. We require that the quantity and quality of the comparator's misconduct be nearly identical to prevent courts from second-guessing employers' reasonable decisions and confusing apples with oranges.

*Maniccia v. Brown*, 171 F.3d 1364, 1368 (11th Cir.1999) (internal quotations and citations omitted). Here, Selby has not shown that there were similarly-situated employees who committed offenses similar to hers.

The record does not support Selby's claim that co-workers Racik and Gaudio, who are not members of the protected class, also misused their employee discounts and were neither disciplined nor terminated. Racik and Gaudio's alleged misdeeds were not sufficiently similar to Selby's. Moreover, no evidence in the record indicates that Pep Boys' management was aware of Selby's allegations against Racik and Gaudio when they fired her.

Selby, a managerial employee, was fired for improperly using her employee discount for a non-family member whom she represented as a family member. Selby claims that Racik, who also worked at the Lauderdale Lakes store as a managerial employee, violated the employee discount policy by using his discount for his father, whom Selby claims did not live with Racik. Selby further claims that Gaudio, who also worked at the Lauderdale Lakes store as a managerial employee, violated the employee discount policy by using his discount for his sister, who lived with him.

Racik and Gaudio were not similarly situated to Selby because they allegedly misused their employee discounts for family members, while Selby admittedly misused her employee discount for a friend who was not a family member. Furthermore, she falsely represented the friend as her .stepmother. Moreover, Selby admitted at her deposition that she did not know if Racik and Gaudio were using their employee discounts properly, for example, to buy gifts for their family members, or improperly.

Courts have recognized that, in order to show that Pep Boys treated Racik and Gaudio more favorably than Selby, there must be evidence that Pep Boys was aware that Racik and Gaudio were engaging in conduct similar to Selby's at the time Selby was fired. *See Williams v. Herman Goelitz Candy Co.*, Civ. S–94–1226, 1995 WL 840766 at *3 (E.D.Cal. Nov.17, 1995), *aff'd*, 131 F.3d 150 (9th Cir.1997); *Fedrick v. Goodyear Tire & Rubber Co.*, CIV. A.H–93–4088, 1996 WL 585474 at *3 (S.D.Tex. July 22, 1996). Accordingly, Selby must prove that Pep Boys knew that Racik and Gaudio allegedly engaged in the same conduct as Selby and took no action because of Racik and Gaudio's race. *See Williams*, 1995 WL 840766 at *4. Thus, Selby's claim must fail because she cannot show that at the time Selby was fired, Dorfman or Riley, whom she believed made the decision

to fire her, nor any other member of Pep Boys' management, had any knowledge of Racik's and Gaudio's alleged abuse of the employee discount policy. Therefore, Pep Boys could not have treated Racik or Gaudio more favorably than Selby if it was unaware that they had allegedly misused the employee discount.[5]

Selby's allegation in paragraph 19 of her affidavit (attached to Plaintiff's Opposition to Defendant's Motion for Summary Judgment), that Gaudio's and Racik's use of the discount was "common knowledge" at Pep Boys, is insufficient to meet her burden to prove the "similarly situated" prong of her prima facie case. See Evans v. McClain of Georgia, Inc., 131 F.3d 957, 962 (11th Cir. 1997) (hearing court correctly found that allegations by non-movant based on common knowledge were not significantly probative because there was no indication that they could be reduced to admissible evidence at trial); Fedrick, 1996 WL 585474 at *4 (plaintiff's allegations of "common knowledge" were insufficient to prove that the manager who decided to demote plaintiff had knowledge that other similarly-situated non-protected employees had engaged in the same misconduct that resulted in plaintiff's demotion). Consequently, the Court finds that Selby has not established a prima facie case of discrimination under § 1981, because she has failed to establish the "similarly-situated" prong of the McDonnell Douglas test.

### B. Legitimate, Non–Discriminatory Reason to Terminate

■ Even if Selby had met her initial burden of establishing a prima facie case of discrimination, Pep Boys has rebutted the presumption of discrimination by articulating a legitimate, non-discriminatory reason for terminating Selby. See Burdine, 450 U.S. at 253, 101 S.Ct. at 1093. Selby was terminated because she misused the employee discount policy. Selby has conceded as much.

### C. Pretext

Once Pep Boys articulates a legitimate, non-discriminatory reason for its action, the initial inference of discrimination "drops" from the case. See St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 510–11, 113 S.Ct. 2742, 2749, 125 L.Ed.2d 407 (1993). The burden then shifts back to Selby to discredit Pep Boys' proffered explanation for its decision and to show that Pep Boys' employment decision was based on racial animus. See Burdine, 450 U.S. at 256, 101 S.Ct. at 1095. Selby may avoid summary judgment and show pretext directly by persuading the Court that a discriminatory reason more likely motivated Pep Boys, or indirectly by showing that Pep Boys' proffered explanation is unworthy of credence. See Combs v. Plantation Patterns, 106 F.3d 1519, 1528 (11th Cir. 1997), cert. denied, 522 U.S. 1045, 118 S.Ct. 685, 139 L.Ed.2d 632 (1998). If Pep Boys' articulated reasons are then found to be a pretext, leaving no valid reason for Pep Boys' actions, it is likely that discrimination was the true reason. See United States Postal Serv. Bd. v. Aikens, 460 U.S. 711, 715–16, 103 S.Ct. 1478, 1482, 75 L.Ed.2d 403 (1983). Selby, therefore, has the opportunity to come forward with evidence, including the previously produced evidence establishing the prima facie case, sufficient to permit a reasonable fact finder to conclude that the reasons given by Pep Boys were not the real reasons for the adverse employment decision. See McDonnell Douglas, 411 U.S. at 804, 93 S.Ct. at 1825; Combs, 106 F.3d at 1528.

Selby, however, has failed to present evidence sufficient to demonstrate a genuine issue of material fact as to the truth or falsity of Pep Boys' legitimate, non-discriminatory reasons. See Evans, 131 F.3d at 964–65. Selby admitted that she violated the employee discount policy by allowing a friend to use her discount. The

---

5. Because of the preceding analysis, there is no need to consider Defendant's claim that Gaudio and Racik held different positions than Selby and that the relative work records and performance of Gaudio, Racik and Selby makes Gaudio and Racik unable to be viewed as similarly situated employees to Selby.

mere fact that Selby *believes* that she was terminated because of her race does not establish that her termination was racially motivated. Selby offers no competent, non-speculative evidence that she was discharged on the basis of her race. Selby's mere belief, speculation, or conclusory accusation that she was subject to discrimination will not create an inference of discrimination or satisfy her burden when responding to a properly supported motion for summary judgment. *See Coutu v. Martin County Bd. Of County Comm'rs*, 47 F.3d 1068, 1073–74 (11th Cir.1995). It is the perception of the decision maker which is relevant to the Court's determination, not Selby's perception of herself. *See Webb v. R & B Holding Co.*, 992 F.Supp. 1382, 1387 (S.D.Fla.1998) (citing *Smith v. Flax*, 618 F.2d 1062, 1067 (4th Cir.1980)).

To show pretext, Selby was required to come forward with some evidence to persuade this Court to reject Pep Boys' proffered non-discriminatory reason. The record, however, is devoid of evidence of discrimination. Selby has put forward no statement or comment made by anyone at Pep Boys, or proffered any documents, to suggest that she was discriminated against based on her race. Selby, therefore, has failed to persuade the Court that the legitimate reason for termination proffered by Pep Boys was pretextual.[6] Because she has not presented significantly probative evidence to meet her burden to establish pretext, she cannot avoid summary judgment. *See Young v. General Foods Corp.*, 840 F.2d 825, 829 (11th Cir. 1988).

### IV. Conclusion

Selby has presented no evidence to show that her termination was due to anything other than Pep Boys' legitimate business reason—that she improperly allowed a friend to misuse her employee discount. Nor has Selby presented evidence which would allow a reasonable trier of fact to

**6.** Because Defendant's Motion for Summary Judgment is granted, whether Selby is enti-

find either that a discriminatory reason motivated Pep Boys or that Pep Boys' legitimate nondiscriminatory reason is unworthy of belief. Based on the foregoing, it is accordingly

**ORDERED AND ADJUDGED** that Defendants' Motion for Summary Judgment Against Plaintiff Selby [D.E. # 43] is **GRANTED.**

DONE AND ORDERED.