George G. WASHINGTON, Plaintiff

v.

**MILTON BRADLEY COMPANY,**
**Defendant**

**No. CIV.A. 03–30054–KPN.**

United States District Court,
D. Massachusetts.

Oct. 8, 2004.

Jessica A. Foster, Shari G. Kleiner, Wilmer Cutler Pickering Hale and Dorr LLP, Boston, MA, Neil Jacobs, Wilmer Cutler Pickering Hale and Dorr LLP, Boston, MA, Karen E. Schneck, Littler Mendelson P.C.—MA Boston, MA, for Milton Bradley Company, Defendant.

Patricia A. Zak, Springfield, MA, for George G. Washington, Plaintiff.

*MEMORANDUM AND ORDER WITH REGARD TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (Document No. 17)*

NEIMAN, United States Magistrate Judge.

George Washington ("Plaintiff"), a former employee of Milton Bradley Company ("Defendant"), is suing Defendant for race discrimination under federal and state law after he was fired, ostensibly for violating certain safety rules, in September of 2000. Defendant has moved for summary judgment claiming that Plaintiff's state claims are time-barred and that, in any event, judgment should enter in its favor with regard to the merits of both the state and federal claims.

With the parties' consent, the matter has been assigned to the undersigned pursuant to 28 U.S.C. § 636(c). For the reasons described below, the court will deny Defendant's motion in its entirety.

## I. BACKGROUND

The following facts are undisputed and stated in a light most favorable to Plaintiff, the non-moving party. Defendant is a games manufacturer located in East Longmeadow. On January 24, 2000, Plaintiff, who is African–American, was hired as a Manufacturing Logistics Supervisor. The actual interviewing and hiring were done by Russell Davies ("Davies"), Director of Manufacturing, and Pedro Caceres ("Caceres"), Vice President of Supply Chain Management.

Beginning in 2000, Defendant introduced a new company safety philosophy. In particular, Defendant provided every employee with a packet of safety rules, among which were ten "cardinal rules." Defendant expressly stated that a violation of a cardinal rule would be considered very serious and could lead to immediate dis-

charge. One of the cardinal rules, Rule 34, required employees to wear a harness and lanyard while working at elevated heights.

During his employment, Plaintiff was well aware of the importance placed on safety. Nevertheless, on September 7, 2000, Plaintiff climbed into a safety cage positioned on a forklift in an effort to remove boxes atop a stack of material bins. He hooked himself to the cage by his belt only and ordered a non-supervisory union employee to raise him via a forklift. Plaintiff admittedly was aware that his effort was in direct violation of Rule 34.

Several employees reported the incident to Plaintiff's immediate supervisor, Donald Lacharite ("Lacharite"), who in turn reported it to higher-level managers. Plaintiff was thereafter informed that his termination was being considered, not only for his own violation of Rule 34, but because he had instructed a subordinate to assist him. In the end, Cacares decided to fire Plaintiff and on September 14, 2000, Defendant's Director of Human Resources notified Plaintiff that he was terminated.

Following his termination, Plaintiff wrote to the American Civil Liberties Union ("ACLU") which, in response, recommended that he contact the Massachusetts Commission Against Discrimination ("MCAD"). Specific facts with respect to Plaintiff's contacts with the MCAD are discussed more fully below. Suffice it to say for purposes here that Plaintiff met with an MCAD employee, received a draft complaint by mail, made corrections to the draft, and hand-delivered a completed complaint alleging race discrimination to the MCAD on November 2, 2000. After hearing nothing from the MCAD, Plaintiff called the agency and was told that his complaint had been lost. Before the year was out, Plaintiff met with an MCAD employee for another intake interview and, at

some time during the next few months, spoke with Alan Cassella, an MCAD employee (who has since passed away). Finally, in "early or mid-April" of 2001, Plaintiff received the complaint in its final form from the MCAD. He signed it, had it notarized, and hand-delivered it to the MCAD on April 26, 2001.

According to records which have been provided the court, Plaintiff's complaint was dismissed by the MCAD on June 28, 2001, because of an alleged failure to cooperate. Nevertheless, on October 18, 2001, the MCAD held a hearing on Plaintiff's case, attended by Plaintiff and Defendant's counsel. The MCAD then authorized an investigation of the complaint but, apparently, did not find in Plaintiff's favor.

Plaintiff filed the instant lawsuit on March 19, 2003. In his complaint, Plaintiff alleges harassment and disparate treatment on the basis of race in violation of both Title VII of the Civil Rights Act of 1967, 42 U.S.C. § 2000e *et seq.* ("Title VII"), and Mass. Gen. L. ch. 151B ("chapter 151B"). Plaintiff has since dropped his "harassment" claims. In due course, Defendant moved for summary judgment, Plaintiff tendered an opposition, Defendant submitted a reply brief, and the court heard oral argument. At oral argument, Plaintiff raised, for the first time, the First Circuit's recent decision in *Cariglia v. Hertz Equip. Rental Corp.,* 363 F.3d 77 (1st Cir.2004). Accordingly, the court allowed Defendant to file a supplemental memorandum addressing *Cariglia.*

## II. STANDARD OF REVIEW

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

Fed.R.Civ.P. 56(c). Although some facts may be disputed by the parties, the summary judgment standard requires that there be no genuine issue of *material* fact. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A material fact creates a genuine issue for trial "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248, 106 S.Ct. 2505. Substantive law governs materiality, and only disputes over facts that might affect the outcome of the trial are material. *Id.* To avoid summary judgment, a plaintiff must make a sufficient showing of the elements essential to the case on which it will bear the burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)

### III. DISCUSSION

Defendant makes two summary judgment arguments: (1) that the state-law claims are barred because Plaintiff failed to timely file his complaint at the MCAD, and that, in any event, (2) since Plaintiff cannot establish a prima facie case for discrimination or show that Defendant's legitimate non-discriminatory reason is pretextual, Defendant is entitled to summary judgment with respect to the merits of both the state and federal claims. The court will address Defendant's arguments in turn.

### A. Timeliness of State Claims

Plaintiff's state claims should be dismissed, Defendant argues, because he did not file his MCAD complaint within six months of the allegedly unlawful conduct, i.e., by March 14, 2001 (six months after his termination on September 14, 2000).

*See* Mass. Gen. L. ch. 151B, § 5 (2001) (stating that chapter 151B discrimination complaints "must be so filed within six months after the alleged act of discrimination").[1] Instead, Defendant asserts, Plaintiff delivered the final version of his complaint to the MCAD on April 26, 2001, over one month late.

Although it appears that the final version of Plaintiff's MCAD complaint was indeed tardy, the court believes, as Plaintiff argues, that the doctrine of equitable tolling saves his state-law claims from being dismissed. It has long been the law that a timely administrative charge of discrimination "is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling." *Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385, 393, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982). *Accord Velez v. Awning Windows, Inc.,* 375 F.3d 35, 43 (1st Cir.2004). The Supreme Court, in fact, has delineated several instances which would likely trigger equitable tolling, e.g., inadequate notice, a pending motion for appointment of counsel, misinformation from a court, or affirmative misconduct by a defendant. *See Baldwin County Welcome Ctr. v. Brown,* 466 U.S. 147, 151, 104 S.Ct. 1723, 80 L.Ed.2d 196 (1984).

Five factors have traditionally been used by courts to determine whether the doctrine of equitable tolling should apply: "(1) lack of actual notice of [the] filing requirement; (2) lack of constructive knowledge of the filing requirement; (3) diligence in pursuing one's rights; (4) absence of prejudice to the defendant; and (5) a plaintiff's reasonableness in remaining ignorant of

---

1. As of November 5, 2002, aggrieved employees have 300 days within which to file state-base discrimination complaints. *See* Mass. St.2002, ch. 223, § 1 (Aug. 7, 2002) (amending Mass. Gen. L. ch. 151B, § 5).

the notice requirement." *Kale v. Combined Ins. Co.*, 861 F.2d 746, 752 (1st Cir.1988) (citing *Andrews v. Orr*, 851 F.2d 146, 151 (6th Cir.1988)). As the First Circuit explained, however, this list is not exhaustive since "[i]t is in the nature of equity to entertain case-specific factors that may counsel in favor of tolling." *Id.* at 753 n. 9.

In the instant case, even Defendant has difficulty arguing, in reference to the third *Kale* factor, that Plaintiff was less than diligent in pursuing his rights. Soon after his termination, Plaintiff met with an MCAD in-take counselor who drafted a complaint. He then revised the draft and promptly returned it to the MCAD on November 2, 2000.[2] Before the end of the year, Plaintiff called the MCAD only to discover that his file had been lost. He then met again with an in-take counselor and drafted another complaint. A more "protracted" period of silence thereafter ensued during which Plaintiff called the MCAD and spoke with "the late Alan Cassella" regarding his complaint.[3] Finally, after receiving a written copy of his complaint in mid-April, Plaintiff promptly signed, notarized and hand-delivered it to the MCAD. Such actions obviously support the diligence requirement for equitable tolling.

Likewise, with regard to the fourth *Kale* factor, it can hardly be argued that Plaintiff's alleged one-month delay in formally filing the final version of his complaint caused Defendant any prejudice. For one thing, Defendant has asserted no harm as a result of this delay. Further, and perhaps more importantly, since the federal and state claims have nearly identical legal standards, see *infra*, and since the federal claims are undisputedly timely, Defendant has been, and still is, prepared to litigate the substantive issues. Thus, Defendant will not be forced to litigate stale state claims should the filing requirement be tolled.

The only possible obstacle to tolling is Plaintiff's own potential culpability in the filing delay. Although the evidence suggests that Plaintiff made several concerted efforts to inquire into the progress of his complaint, at least three months passed between his second in-take interview and the March 14, 2001 statutory deadline by which the complaint had to be filed. Three months may well have provided ample time to file a formal complaint regardless of other obstacles. Also mitigating in Defendant's favor—arguably with regard to the remaining *Kale* factors—is the fact that Plaintiff acknowledged at his deposition that he "had six months from the time of termination" in which to file his complaint. Thus, Defendant argues, Plaintiff was fully aware of the precise filing deadline. *See Kale*, 861 F.2d at 754 (notification of an agency's requirements may constitute *actual* knowledge of the agency's filing deadline). For his part, Plaintiff asserts that his deposition testimony indicates only that he knew he had to visit the MCAD within six months.

Regardless of which party has the better interpretation on this particular point, the court, as described, must apply the doctrine of equitable tolling on a case-specific basis and—according to the Supreme Court—a stringently technical reading of the law is "particularly inappropriate in a statutory scheme in which laymen, unas-

---

2. Although Defendant does not expressly concede this fact, neither does it deny it. Moreover, Plaintiff submits as an exhibit a copy of an envelope from the MCAD which is stamped November 2, 2000.

3. Neither party has indicated precisely when this conversation occurred or when Mr. Cassella passed away.

sisted by trained lawyers, initiate the process." *Zipes*, 455 U.S. at 397, 102 S.Ct. 1127. In addition, "[a]s the Supreme Judicial Court of Massachusetts has held, this doctrine 'is [also] available ... where ... the MCAD has affirmatively misled the plaintiff.'" *Davis v. Lucent Techs., Inc.*, 251 F.3d 227, 234 (1st Cir.2001) (quoting *Andrews v. Arkwright Mut. Ins. Co.*, 423 Mass. 1021, 673 N.E.2d 40, 41 (1996)) (emphasis omitted).[4] Likewise, as District Judge David S. Nelson once observed, a misrepresentation by the Equal Employment Opportunity Commission ("EEOC") to a claimant—that the limitations period was "no problem" and would be "extended"—"present[ed] a situation in which equitable tolling typically has been invoked." *Leite v. Kennecott Copper Corp.*, 558 F.Supp. 1170, 1173 (D.Mass.), *aff'd without opinion*, 720 F.2d 658 (1st Cir.1983). Other jurisdictions have also recognized "agency error" as a justification for equitable tolling. *See, e.g., Wilson v. St. Louis S.F.R. Co.*, 673 F.2d 1152, 1153 (10th Cir. 1982) (applying equitable tolling where EEOC failed to inform plaintiff how to preserve his Title VII rights); *Cody v. Southwest Forest Indus.*, C.A. No. 86–C–3051, 1987 WL 5414, at *3 (N.D.Ill. Jan.15, 1987) (applying equitable tolling where EEOC misplaced plaintiff's file and mistakenly reassured her to the contrary). *See also McKee v. McDonnell Douglas Tech. Servs. Co.*, 700 F.2d 260, 264 (5th Cir.1983) ("[T]he complainant is not to be prejudiced by the EEOC's failure to fulfill its duty.").

In light of this caselaw—as well as the particular circumstances of Plaintiff's case—the court believes that it would violate the intent and spirit of the equitable tolling doctrine to bar Plaintiff's state claims on untimeliness grounds. For one thing, this is a case, perhaps unique, in which the MCAD itself erred (it lost Plaintiff's file), was sloppy (it failed to forward Plaintiff a second, completed complaint until after the limitations period had expired), and may have been caught up in circumstances beyond its control (one of its key employees on this matter passed away around the end of the statutory period).[5] In addition, as described, Plaintiff diligently pursued his rights and was without assistance of counsel during the administrative process. *Compare Kale*, 861 F.2d at 753 (representation by counsel should generally constitute constructive knowledge sufficient to preclude equitable tolling). Finally, as indicated, Defendant has not been prejudiced by the delay. Given this entire picture, the court concludes that equitable tolling applies and, accordingly, will not dismiss Plaintiff's state-law claims on grounds of untimeliness.

### B. Merits of Title VII and Chapter 151B Claims

Defendant's second, alternative argument attacks the underlying merits of Plaintiff's federal and state disparate treatment claims. In essence, Defendant asserts that Plaintiff has failed to (1) establish a *prima facie* case of race discrimination or (2) show that Defendant's legitimate, non-discriminatory reason for his

---

**4.** Similarly, the First Circuit stated in an unreported decision that equitable tolling might apply "where ... the court ... misled or lulled [the plaintiff] into inaction." *Al–Wardi v. Command Airways*, 39 F.3d 1166, 1994 WL 584548, at *2 (1st Cir.1994). *See also Baldwin*, 466 U.S. at 151, 104 S.Ct. 1723 (recognizing that equitable tolling might apply

"where the court has led the plaintiff to believe that she had done everything required of her").

**5.** Indeed, the MCAD seemed unconcerned with Plaintiff's alleged untimeliness: it held a hearing on Plaintiff's case and authorized the investigation of his claims.

termination was pretextual. In the end, the court finds these arguments wanting.

Defendant's arguments center on the familiar three stage, burden-shifting framework first outlined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and further detailed in *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981), *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993), and *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000). *See Thomas v. Eastman Kodak Co.*, 183 F.3d 38, 56 (1st Cir.1999); *Benham v. Lenox Sav. Bank*, 118 F.Supp.2d 132, 141 (D.Mass.2000). It is noted that this three-step analysis essentially parallels that applicable to chapter 151B. *See Fite v. Digital Equip. Corp.*, 232 F.3d 3, 7 (1st Cir. 2000) ("In our view, federal and Massachusetts law are now generally aligned . . . .") (citing *Reeves* and *Abramian v. President & Fellows of Harvard College*, 432 Mass. 107, 731 N.E.2d 1075, 1084–86 (2000)). *See also Joyal v. Hasbro, Inc.*, 380 F.3d 14, 16 (1st Cir.2004) ("Massachusetts case law uses a burden-shifting device akin to federal law to force the employer to supply reasons for his action once an easily made *prima facie* case is established."). The court, therefore, will address Plaintiff's

state and federal claims together and refer principally to federal caselaw.[6]

### 1. *Prima Facie Case*

■ At the first stage of the burden-shifting analysis, a plaintiff must establish a *prima facie* case of disparate treatment by a preponderance of the evidence. *See Thomas*, 183 F.3d 38, 56 (1st Cir.1999). To do so, he generally must show that (1) he is a member of a protected class, (2) he was qualified for the job, (3) he suffered an adverse employment action, and (4) the position remained open or was filled by a person with similar qualifications. *See Kosereis v. Rhode Island*, 331 F.3d 207, 212–13 (1st Cir.2003). The First Circuit has variously "described the *prima facie* case as a 'small showing' that is 'not onerous' and is 'easily made.' " *Id.* at 213 (citations omitted). Indeed, the parties agree that Plaintiff has easily satisfied elements (1) and (3): he is a member of a protected class and suffered an adverse employment action, termination.

To be sure, Defendant devotes considerable energy arguing that Plaintiff was not performing his job satisfactorily, element (2). Defendant also describes element (4) as requiring Plaintiff to show that similarly situated employees who were not members of the protected class were treated more favorably. The First Circuit, however, suggests that "the time to consider com-

---

**6.** In so doing, the court is mindful that the First Circuit, in a recent age discrimination case originating in this court and involving Defendant's parent company, noted a "subtlety" between federal and Massachusetts law on the question of pretext. *See Joyal*, 380 F.3d at 16 (observing that under federal law, evidence of discriminatory intent "may include inferences drawn against the employer if his alleged reason or reasons for the adverse action are shown to be 'pretextual' " whereas, under Massachusetts law, "a plaintiff *may* be able—automatically and regardless of circumstances—to avoid a directed verdict and reach

a jury if he or she proves that at least one of the reasons given by the defendant was pretextual") (emphasis in original). That subtlety does not appear to be present here and, more importantly, both parties have indicated a willingness to consider the federal and state standards congruent. (See, e.g., Document No. 19 (Defendant's Brief) at 13 n. 8 ("The analysis under [chapter] 151B and federal discrimination law is similar, as Massachusetts courts have *explicitly adopted* the federal legal analysis.") (citations omitted; emphasis added).)

parative evidence in a disparate treatment case" is at the third-stage. *Conward v. Cambridge Sch. Comm.*, 171 F.3d 12, 20 (1st Cir.1999). *Accord Kosereis*, 331 F.3d at 213. Given this suggestion, together with the ease with which *prima facie* cases are usually established, the court finds that Plaintiff has stated a *prima facie* case of disparate treatment and will move on to the third analytical stage. *See also Benoit v. Tech. Mfg. Corp.*, 331 F.3d 166, 173 n. 2 (1st Cir.2003).

### 2. Second Stage

Before doing so, of course, the court must at least pass through the second stage of the analysis, where the burden shifts to the employer-defendant to produce a valid, nondiscriminatory reason for the adverse action. *See Thomas*, 183 F.3d at 56. Defendant, Plaintiff concedes, has sustained that burden. As Plaintiff acknowledges, Defendant emphasized the importance of safety: it provided all employees with a handbook highlighting the cardinal safety rules and one of those rules, Rule 34, stated that "[e]mployees working at elevated heights . . . must wear a safety harness and lanyard of approved design" and that "[f]all protection is required when working from elevating equipment." And, by his own admission, Plaintiff violated Rule 34. It is also undisputed that the handbook provided that a violation of a cardinal safety rule could lead to immediate discharge. In short, there is no doubt that Defendant has presented " 'reasons for its actions which, if believed by the trier of fact, would support a finding that unlawful discrimination was not the cause of the employment action.' " *Thomas*, 183 F.3d at 56 (quoting *Hicks*, 509 U.S. at 507, 113 S.Ct. 2742).

### 3. Third Stage

At the third stage of the sequential analysis, it becomes the plaintiff's burden to establish by a preponderance of the evidence "that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Reeves*, 530 U.S. at 143, 120 S.Ct. 2097 (citation and internal quotation marks omitted). "Although, in this posture, the burden-shifting framework itself becomes inconsequential, the court must still examine the [same] evidence that the parties adduced [during the first stage] in proceeding under the framework." *Mesnick v. Gen. Elec. Co.*, 950 F.2d 816, 825 n. 6 (1st Cir.1991).

A direct showing that similarly situated white employees were treated differently is "[t]he most probative means of establishing that the plaintiff's termination was a pretext for racial discrimination." *Matthews v. Ocean Spray Cranberries, Inc.*, 426 Mass. 122, 686 N.E.2d 1303, 1309 (1997). *See also Pagano v. Frank*, 983 F.2d 343, 348 (1st Cir.1993) (pretext argument hinges on whether particular employment policy "was not applied to other, similarly situated, non-[minority] employees in the same way"). In assessing pretext, a court must focus on " 'the perception of the decisionmaker,' that is, whether the employer believed its stated reason to be credible." *Mesnick*, 950 F.2d at 824 (quoting *Gray v. New England Tel. & Tel. Co.*, 792 F.2d 251, 256 (1st Cir.1986)). To be sure, "[c]ourts may not sit as super personnel departments, assessing the merits—or even the rationality—of employers' non-discriminatory business decisions." *Id.* at 825. Instead, at the summary judgment stage, a plaintiff must show evidence sufficient "to enable a rational factfinder reasonably to infer that unlawful discrimination was a determinative factor in the adverse employment action." *Thomas*, 183 F.3d at 57 (citations and internal quotation marks omitted).

In order for a plaintiff to make such a showing, he must typically point to "others similarly situated to him in all relevant respects [who] were treated differently by the employer." *Conward,* 171 F.3d at 20 (citing *Perkins v. Brigham & Women's Hosp.,* 78 F.3d 747, 751 (1st Cir.1996)). *Accord Matthews,* 686 N.E.2d at 1309–10. Of course, the comparitors that a plaintiff provides "need not be perfect replicas," but they must bear a reasonably close resemblance with respect to the pertinent facts and circumstances. *Conward,* 171 F.3d at 20. At bottom, a court must determine "whether a prudent person, looking objectively at the incidents, would think them roughly equivalent and the protagonists similarly situated." *Id.* (finding incident involving black teacher's giving lewd documents to female student not sufficiently similar to white teacher shoving a male student as to constitute basis for disparate treatment claim).

To these ends, Plaintiff argues that Defendant's stated reason for his termination was pretextual because (1) safety violations were rampant and selectively reported to management and (2) violations committed by white employees that were in fact reported were dealt with less severely. In support, Plaintiff first proffers his own deposition and that of his wife, who is also a former employee of Milton Bradley. Plaintiff and his wife both testified that they observed safety violations committed by white employees and that the alleged infractions included cardinal rule violations by both supervisors and non-supervisors. In addition, according to Plaintiff and his wife, Plaintiff's violation was immediately reported by his supervisor, whereas these other violations never were.

Plaintiff has also supplied a set of internal files (currently under seal) that purport to document safety infractions committed by similarly-situated white employees. The files contain descriptions of safety infractions committed by both supervisors and non-supervisors, as well as management's decision in each case only to reprimand or suspend the employee. In each instance, Plaintiff contends, no white employee was terminated without at least one warning or suspension, whereas Plaintiff was immediately fired.

For its part, Defendant argues that, in order for Plaintiff to properly compare his situation to other employees, he must show that its decisionmakers knew of similar violations. *See Shumway v. UPS,* 118 F.3d 60, 64–65 (2nd Cir.1997) (finding that, although plaintiff made allegations that other employees committed similar infractions, she did not show that decisionmaker who terminated her knew of other violations); *St. Hilaire v. The Pep Boys—Manny, Moe and Jack,* 73 F.Supp.2d 1366, 1372 (S.D.Fla. Sept.2, 1999) (finding that because neither the supervisors who fired her, nor any other member of management knew of similar infractions by other employees, plaintiff could not show disparate treatment). Plaintiff, Defendant asserts, has provided no such evidence. In particular, Defendant continues, Plaintiff has not demonstrated that Caceres—the manager who decided both to hire and fire Plaintiff—or any other decisionmaker knew of the alleged safety violations committed by white employees. Plaintiff's bare allegation that such infractions were "common knowledge," Defendant argues, is insufficient to show that its decisionmakers knew of the infractions. *See St. Hilaire,* 73 F.Supp.2d at 1372 (citing, *inter alia, Evans v. McClain, Inc.,* 131 F.3d 957, 962 (11th Cir.1997)).

In the end, the court believes that Plaintiff has the better argument for summary judgment purposes. The record suggests that similarly situated white employees were treated differently from

Plaintiff. For example, one operations manager received only a warning after he allowed an untrained employee to operate a machine that lacked the proper safety guarding, which caused the employee to be severely injured. The record also shows that two non-supervisory employees violated multiple safety rules, including cardinal rules, and initially only received warnings for their behavior.[7] In addition, the documents show that the operations manager's infraction was specifically brought to Caceres' attention. Similarly, Defendant does not dispute that Caceres knew of the two non-supervisory employees' infractions as well.

To be sure, as Defendant contends, these cases may be distinguishable because they either involved non-supervisory employees violating a cardinal rule or a supervisory employee violating a non-cardinal rule. In other words, Defendant argues, the so-called white "comparitors" were not similarly situated to Plaintiff in all relevant respects.

Moreover, Defendant maintains, the applicable Collective Bargaining Agreement ("CBA")—which covered union members such as the three comparitors identified by Plaintiff, but not Plaintiff himself—comes into play in at least two ways. First, since the operations manager only directed a non-supervisory employee to violate a cardinal rule, his infraction did not rise to the level of required termination pursuant to the CBA. Likewise, Defendant asserts, the two non-supervisory employees did not direct another employee to violate a cardinal rule and, thus, their infractions too did not

rise to the level of required termination pursuant to the CBA. Finally, Defendant argues, Plaintiff has failed to establish pretext because Caceres himself not only made the decision to hire Plaintiff, but to fire him after he worked for only a short-time, the inference being that race played no part in those decisions. *See Proud v. Stone*, 945 F.2d 796, 797 (4th Cir.1991) ("[I]n cases where the hirer and the firer are the same individual and the termination of employment occurs within a relatively short time span following the hiring, a strong inference exists that discrimination was not a determining factor for the adverse action taken by the employer.").

Although Defendant's arguments may ultimately bear fruit, most are unsupported by any admissible evidence. For example, Defendant only mentions the CBA in its reply brief and has not provided the court with a copy. More importantly, the court believes, Defendant's alleged distinctions are too finely drawn for present purposes; resolution of these distinctions, is best left to a factfinder at trial. And at best, the inference that Caceres' actions were non-discriminatory is only that, an inference; sanding alone, it is insufficient to overcome the existence of genuine issues of material fact with regard to the question of pretext.

In sum, the court finds that Plaintiff has provided sufficient evidence such that a reasonable jury could find that Defendant discriminated against Plaintiff in comparison to similarly situated employees. Accordingly, the court will deny Defendant's motion for summary judgment.[8]

---

7. Defendant terminated one of those employees after his next comparable infraction. The other received multiple warnings before termination.

8. It is thus unnecessary to address Plaintiff's additional contention that Lacharite, the supervisor who reported Plaintiff's safety viola-

tions to higher-level managers, was personally opposed to interracial marriage. Plaintiff's argument to the contrary, the First Circuit's recent decision in *Cariglia* appears distinguishable insofar as there appears to be no evidence here that Lacharite's report of the safety violations was itself improper or other-

## IV. CONCLUSION

For the reasons stated, Defendant's motion for summary judgment is DENIED. The clerk is hereby requested to schedule a case management conference.

wise motivated by prejudice or racism. *Compare id.*, 363 F.3d at 85 (finding that employer could be liable for termination of employee *that resulted from* age-biased supervisor falsifying information to decisionmakers), *with Webber v. Int'l Paper Co.*, 326 F.Supp.2d 160, 167 (D.Me.2004) (distinguishing *Cariglia* where there was no evidence that employees who arguably harbored discriminatory animus provided negative information in order to influence management's decision to terminate the plaintiff's employment).